Wm. Sargent *vs.* The Ohio & Mississippi Railroad Company.

In General Term—October 1854.

Before Judges STORER, SPENCER, and GHOLSON.

WM. SARGENT *vs.* THE OHIO & MISSISSIPPI RAILROAD COMPANY.

Equity will not interpose to restrain a *public* nuisance, on the application of a private individual, unless he sustain *special and material damage therefrom,* beyond what the public at large may sustain.

Damages, which are not the *direct* consequence of an act, but only flow *remotely* therefrom, are not the subject matter of an action *at law,* or of relief in equity. Ex. gra.

.*A.* may not bring an action for the destruction of *B.*'s property, nor enjoin its destruction, because the existence of the latter gave additional value to his own.

A grant by the City Council to use the streets of a city, for a purpose not incompatible with the public use of the street, in other modes, and for other purposes, is not an invasion of private rights, nor a breach of public trust.

The use of streets is not confined to the passage and re-passage of the same kind of vehicles that are in use at the time of their dedication for public use.

The City Council of Cincinnati have power to regulate the use of the streets and highways of the City, in such manner as to render them conducive to the public benefit.

They have no power to create, or allow a public nuisance therein.

The City Council of Cincinnati must necessarily themselves be the judges of what is most beneficial to the public.

They may not, however, abridge, or destroy *private rights,* nor *wantonly,* or *unnecessarily* interrupt them.

When the City Council exercises its judicial function, within the scope of its powers, the Courts will not interfere with its judgment, unless it be clearly shown to be founded in mistake, fraud, or a wanton spirit.

Laying a Railroad track through even the great thoroughfares of a city, is not such an obstruction of the public streets as necessarily to amount to a nuisance.

Equity never interposes its extraordinary powers, upon a mere apprehension of mischief, however well founded. The mischief must be *certain,* and its approach *perilous.*

The possibility that a Railway may be abused to the public inconvenience, forms no ground for intercepting the progress of its construction, and preventing the laying of the track. Though the running of cars through a street may somewhat obstruct the free passage of vehicles of another kind, yet, unless that use by the cars be *unreasonable, or exclusive of others,* it forms no ground for restraint by injunction.

The public highway is subserving its *highest* and *best* use when accommodating the largest number.

The law presumes that Railroads are *benefits,* unless it otherwise appears from the circumstances of the case.

A temporary and transient occupation of the street, for the purpose of enlarging

and repairing it, under a contract with the City Council, though *exclusive*, will not be ground for an injunction.

If, however, exclusive possession was held for an *unreasonable* length of time, for the purposes of private gain, it would be otherwise.

A casual, and temporary obstruction, in laying down the rails through the streets, unless wantonly made, would form no ground for an action at law, much less of an injunction.

This was an application for injunction, made to one of the judges at a special term, and was reserved for hearing before all the judges.

The cause was fully argued by GAINES & FRENCH, KING & ANDERSON, TILDEN, RAIRDEN, & CURWEN for the complainants, and COFFIN & MITCHELL for the defendants.

The facts are sufficiently stated in the opinion of the Court.

SPENCER, J. delivered the opinion of the Court.

The petition in this case sets forth, that the plaintiff is, and has been since the year 1827, owner in fee of lot No. 26, as laid down on a plat of lots made by the guardians of the heirs of Israel Ludlow deceased, the same being situated between the termini of Fifth and Sixth Streets, in the western part of the city of Cincinnati, upon which the plaintiff has erected houses, and other valuable improvements. That across said lot running from east to west, between its northern boundary and the river, a public street or highway was laid out and dedicated by the former proprietors thereof, sixty six feet in width, for public use ; and ever since then has been used exclusively for such purposes. That the plaintiff has expended a large amount of labor and money for the improvement and repair of the same ; and that the free and unobstructed use thereof renders his said property valuable for residences

and business purposes. That through the neglect and mismanagement of the proper authorities of said city, having the control of said street, the same has been washed away by the Ohio River, so as to become reduced in width to an average of less than 25 feet, from the curb-stone in front of the plaintiff's premises, on the north side thereof.

The petition further sets forth, that by the procurement of the defendants, the City Council of Cincinnati have lately passed certain resolutions, purporting to grant to the defendants the occupancy of said street for the term of three years from the fifth day of December next; by virtue of which the defendants declare their determination to proceed forthwith to tear up the pavement; dig up, and obstruct the street with timber and other materials; lay down a rail track thereon of six feet gauge; and run upon the same locomotives with steam power for all the various purposes of the business in which they are engaged.

The petition further claims, that as it appears from the petition and plat accompanying the same, presented by the defendants to the said City Council, asking for the grant aforesaid, (upon the latter of which the contemplated track of said Railroad is traced in dotted lines) it is the intention of the defendants to occupy therewith the northern part of said street; whereby the entire street in front of the petitioner's premises, and for some distance therefrom, "will be so obstructed as to become wholly useless for the ordinary purposes of a street or highway." That on the river side of the street, from Fifth to Sixth streets, is a precipice, without railing or protection; from which, in connection with the obstruction of the track, and running of locomotives thereon, will be great danger

to life and property; and from all which, heavy damage will accrue to the adjoining property, including that of plaintiff.

The petition further avers, that the public landing at the foot of Fifth Street, owned by the city, and the ferry privilege pertaining thereto, are of great and rapidly increasing value to the property of petitioner; which landing requires the unobstructed use of the several streets leading thereto, including Front Street, all of which will be obstructed and cut off by said Railroad from the landing and ferry.

For all which threatened injuries, no compensation has been made or tendered by the defendants, although required, (as alleged) by the said resolutions of the City Council.

There are also averments in the petition to the effect, that Front Street is a thoroughfare of great consequence to the public at large. That there is no necessity for the occupancy thereof by the defendants, in the manner proposed. That the City Council has no power to allow the same; and that if permitted, a public nuisance will be occasioned thereby.

Wherefore, an injunction is asked for restraining the defendants from laying said track, running locomotives thereon, and committing each and every of the acts permitted by said resolutions.

The exhibits accompanying the petition, and made part thereof, show, that on the fifth day of July last, the defendants made application to the City Council of Cincinnati, to occupy temporarily with their track a portion of West Front Street, agreeably to a plat accompanying the same—assigning as a reason, the difficulty of obtaining

immediate possession of other lands, on which they designed laying their permanent track, and the importance to the company, as well as to the city at large, of having a speedy connection with the business part of the city. Upon the plat is rudely traced a dotted line, showing the general course and termini of the proposed track, extending along Front from Sixth to Wood Streets. Upon inspection of the plat, it appears to have no scale of distances marked upon it—nor any figures, by which it can be ascertained with any *precision*, what part or parts of Front Street they desire to occupy with their track, whether the north, middle, or south. It is apparent indeed, that no *specific* or *fixed* line of track was intended thereby.

The assumption, therefore, of the plaintiff's petition, predicated upon the plat, that the defendants intended to occupy the north side of the street, and thereby throw the *general travel* upon its south, or river side, to the precipitous bank, is wholly unwarranted.

It is further shown by exhibit *B*, that upon considering the petition of the defendants, the City Council, by resolution, granted them privilege "to lay down rails for a *single track* upon West Front Street, commencing at its intersection with Sixth, and running easterly to the depot of the company upon Wood Street, and no further—upon condition, that the company repair so much of said Front Street as may be necessary to take up, in laying down the rails for said road, and place the same in as good condition as it is at present, and pay all the damages, if any, that may result to private property, from the occupancy of the street by the Railroad, and in no case shall any change of grade be made. The rails to be put down in such a manner as to leave the surface of the street as level

as the nature of the work will admit. And said company agreeing to fill out, grade, and cover with coarse gravel to the depth of one foot at least, said West Front Street, so as to make the same sixty six feet in width, from Fifth to Horne Street. Said company also agreeing to grade, and cover with coarse gravel all the established cross streets upon said fill, from Front Street to low water. All the work contemplated by this resolution, to be done under the direction and with the approval of the *City Civil Engineer*."

Said grant was to continue for the term of three years from the first day of December next, when it was to cease wholly; the street to be vacated by the company, and they to place the same in as good condition as before. Said company was not allowed to permit their locomotives, cars, tenders, or other incumbrances to stand upon the street; or to permit their cars or locomotives to run at greater speed than six miles per hour. They were to be liable for all accidents from fire or otherwise, occasioned by the running of their locomotives. And finally, were to give bond in the sum of $10,000, for the faithful performance on their part of the conditions of said grant.

The answer of the defendants contains a general denial of all the material averments of the plaintiff's petition, except so far as expressly admitted. And it specially denies the title of the plaintiff in the street or highway, other than to the use thereof for convenient access to his adjacent property, and in conjunction with the public at large. It insists that the average width of Front Street is some thirty two feet, exclusive of side walk; and when the street shall have been widened, as they intend it shall

be at once, under the resolution of the Council, it will be vastly more convenient for the public use, with whatever of obstruction the rail track may occasion, than it now is. But the answer further insists, that the defendants do not intend in any wise to occupy the street in front of the plaintiff's property with their rail track, as authorized by said resolution of the City Council, nor any part of said street for the space of three or four hundred feet from the plaintiff's property; and as to the residue of the street which they do intend so to occupy, it avers their design and ability so to lay the track down, as to leave it level with the surface of the surrounding street, and so as to occasion no impediment or hindrance to the accustomed and free passage over it, of wagons, carriages, and other vehicles, at all points, and at all times as heretofore; and in such a manner, as not to hinder the convenient use of the street while the work is going on.

. The answer concludes by insisting that it is *necessary* for the defendants to use the street for the purposes of this road; and denies that by so doing, they will occasion any damage to the plaintiff's property.

On the part of the plaintiff, five affidavits have been read, given by persons residing on the street, and in the neighborhood; from which it appears, that there is a large amount of passing and repassing at the junction of Front, Fifth, and Freeman Streets, during much of the year, chiefly in connection with the public landing, and ferry, opposite that place. That the road will cut those streets diagonally, and will thereby, as the affiants believe, greatly obstruct the passage of the street at that point, and especially the access to *the landing and ferry,* which give value to the property in the neighborhood, and the ob-

struction of which will be the means of depreciating the value of the neighboring property.

On the part of the defendants, the answer is *in all respects* fully sustained by the affidavit of S. S. Post, the engineer in chief of the company, under whose direction and superintendance, the work, if allowed, is to be done. He affirms in positive terms, that the track, when finished, "will present no obstruction to the passage of the usual vehicles of travel over the street and rails, either lengthwise, transversely, or at any angle;" and that it will be so constructed as to render it "impossible for a cart or carriage wheel to be jammed into it, or by it, or for a horse's hoof to be caught in, or injured by it."

It might perhaps be sufficient to dispose of the present application, by saying, that it is apparent from the answer of defendants, and the accompanying affidavit of their chief engineer of construction, that there is no design on the part of the defendants to lay their track upon any part of the street, in front of the plaintiff's premises, or indeed nearer thereto, than the space of from three to four hundred feet. So that the plaintiff will not be obstructed in the use of the street in front of his own premises; be denied convenient access thereto; or be in any wise *directly* endamaged thereby. The injury, if any should be occasioned him, will be, either such as may arise *indirectly* to his property in consequence of the depreciation of the adjacent public landing and ferry, by an obstruction placed at the junction of Fifth and Front Streets, a distance of perhaps a quarter of a mile from the plaintiff's premises; (and this is, in truth, the character of the injury testified to in the plaintiff's affidavits) or, it will be such only as the plaintiff may sustain in common with the public at

large. In the latter case, it is clear, that the Court would not be authorized to interfere by injunction; for, it is well settled, that equity will not interpose to restrain a *public* nuisance, on the application of a private individual, unless he sustain *special and material damage* therefrom, beyond what the public at large may sustain.

In the former case, it is equally clear, that the injury is without legal remedy. It is what the law terms, *" damnum absque injuria."* Damages which are not the direct consequence of an act, but only flow *remotely* therefrom, are not the subject matter of an action *at law*, or of relief in equity. It would be a strange proposition to urge, that *A.* should have an action at law for the destruction of *B.'s* property, or might enjoin the destruction thereof, because the existence of the latter gave additional value to his own. The adoption of such a proposition would prevent *B.* from disposing of his *own property*, lest *A.* might be endamaged thereby. Such is in truth, the condition of the present case. The plaintiff seeks to prevent an injury, not to his own property directly, but to that of *others*, (the public landing and ferry) lest, perchance, the injury to the latter may be the means of damaging his own. Should the owners of the latter consent to its destruction, or should the defendants become its owners, the plaintiff would be equally injured, yet, without remedy. This view of the case disposes of the question of *compensation* raised by the plaintiff in his petition. The damage, if any, which he is likely to sustain, is not the subject of an *action*, and so, not of compensation. The compensation required by the resolution of the City Council, must be intended to mean for injuries such as the law would compensate by action.

But we are not satisfied to rest our decision in this case, upon the above ground alone. There are other persons, whose property is in more immediate juxta-position with the alleged contemplated obstruction, than that of the plaintiff, and therefore more affected thereby, who, we have reason to believe, would still require us to decide upon the main question intended to be controverted in the present case; and that is, whether the alleged obstruction is likely to arise, and will be of such a character as to require our interposition to prevent it. Here it may be proper to observe, that a preliminary question has been raised, and ably discussed at bar, as to the *power* of the City Council to permit the use of any of the streets of the city, for the purposes of a Railroad, which we do not deem it necessary seriously and at large to consider. That question is involved in the disposal of another, which it becomes indispensable to decide; and that is, whether such an use, in any given case, is incompatible with the public use of the street, in other modes, and for other purposes. If not, there is clearly no invasion of private right, nor breach of public trust. The uses of a street in a city are not necessarily limited to the passage and re-passage over the same, of wagons, carriages, or such other modes of conveyance as were in existence, at the time of their dedication. Such a limited construction of a dedication would prevent all progress and improvement in modes of transportation. Towns are laid out, and streets therein dedicated, not for the present only, but for future time; and that use of a street, which, in one age or generation would be highly appropriate, might in another become exceedingly burthensome. Hence it is, that power is given to the corporate authorities of all large cities to regulate

the use of their streets and highways by the public. In the case of our own city, such power is given in general terms, in the 63 Sec. of the "Act to provide for the organization of cities and incorporated villages." (City Charter.) That Section provides, that "the City Council shall "have the care, supervision, and control of all public high-"ways, bridges, streets, alleys, public squares, and com-"mons within the city; and shall cause the same to be "kept open, and in repair, and *free from nuisances.*" Subject to this latter clause, that the Council shall not have power to create, or allow public nuisances therein; they have full authority to regulate the use of the streets in such manner, as to render them most conducive to the public benefit; and of this, *they must necessarily be the judges.* But, aside from the *general* grant of power thus bestowed, *special* power is given over the subject, by the 12th Section of the "Act to provide for the creation and regulation of incorporated companies in the State of Ohio," (*Swan's Stat.* 602.) That section provides, "if it shall be "necessary in the location of any part of any Railroad, to "occupy any road, street, alley, or public way, or ground "of any kind, or any part thereof, it shall be competent "for the municipal, or other corporation, or public officer, "or public authorities owning, or having charge thereof, "and the Railroad Company, to agree upon the manner, and "upon the terms, and conditions, upon which the same "may be used or occupied."

But, even in this latter case the power of the city authorities to make the grant, is not necessarily *absolute.*— It must be taken that the Legislature did not intend to destroy or abridge *private right.* In its exercise, therefore, care must be taken to respect the rights of the citi-

Wm. Sargent *vs*. The Ohio & Mississippi Railroad Company.

zen, and not *wantonly*, or *unnecessarily* interrupt them.— Of the necessity referred to in the law for laying a Railroad through the streets of a city, the corporate authorities thereof, in conjunction with the Railroad Company, must in the first instance judge. That judgment, once exercised, must be respected by the Court as correct, unless it be clearly shown to be founded in mistake, fraud, or a wanton spirit; of which here, we have no evidence whatever.

This brings us back to a consideration of the question first proposed—whether the alleged occupation of Front street, as contemplated by the defendants, under the resolution of the City Council, will be such an obstruction of the street as to require our interference to prevent it; in other words, whether it will seriously affect the plaintiff's right, or injure his property, granting that the latter was situated at the point of the supposed obstruction.

Now, it is worthy of observation, that neither the petition itself, nor the affidavits in its support, disclose with any certainty, in what way the free use of this street will be materially obstructed by the intended use thereof on the part of the defendants; whether from the *manner* of laying down the rails, or the running of cars thereon, either with, or without locomotives attached thereto.

1. If it be supposed to arise from the manner of laying down the rails, then it does not appear that either of them has enquired, or been in any wise informed of the way in which the thing is intended to be done; whilst on the other hand, we have the *positive* averment of a competent engineer, that it can and will be done in such wise as to leave a *smooth* and unbroken surface of street, wholly free and open for the passage of vehicles of every description, and in every way. Added to this, the work is

required to be done under the direction of the *City Civil Engineer*, whose duty and business it is to see that the public streets of the city are not unnecessarily obstructed, and who, we are constrained to presume, will faithfully discharge the obligation imposed upon him in this behalf.

Now, it cannot be denied that it is *practicable* so to lay a rail-track even through a much travelled street of a populous city, and to run cars almost constantly thereon, as to occasion little, if any, interruption to the progress of the accustomed vehicles of travel. Indeed it is a matter well known, that at this day, almost all of the principal cities of the Union have allowed railroads to be laid into their very midst, and upon their principal streets. In the case of Hamilton *v.* the New York & Harlem Rail Road Co. 9 *Paige*, 171, which was an application for an injunction to restrain the defendants from extending their Railroad through Broome street in the City of New York, upon the ground that it would materially interfere with the use of the street for the ordinary purpose of passing with carriages and carts, it was said by the Chancellor, in denying the injunction, "that the construction of the "road with the groove rail, laid upon a level with the sur- "face of the pavement, would leave the whole street per- "fectly free for the passage of carts and carriages of every "kind, for the whole width thereof, except at the moment "when the cars should be passing upon the track in the "centre of the street;" and that the temporary obstruc. tion, if any, occasioned by the running of the cars, was not such a nuisance to the owners of the adjacent property as to warrant an injunction. *P.* 173. So, in the very recent case of Milham *v.* Sharp, 15 *Barbour*, 193 (decided April 1853) although an injunction was granted upon

other grounds, it was held, that the laying down of a railway, even upon Broadway, the great thoroughfare of New York City, would not be necessarily such an obstruction of the street as to amount to a nuisance. And in concluding upon this point, the Court use this marked language; "No one will seriously deny, that the track "might be used, or rather, there is no certainty it will not "be used, in such a way as materially to impair and ob-"struct the public right of passage and re-passage through "and over the street; but such a possibility would not be "sufficient to authorize the interference of the Court at "this time." *P.* 208.

2. If the obstruction be supposed to consist in the frequent passing and re-passing of cars, either with or without locomotives attached, it may be enough to say that it is not *impossible* so to regulate the time and manner of running the cars, as not to occasion a serious obstruction, whether it be in regard to the length of trains, or the use of locomotives. But how can we know, at this time, that locomotives will be used; or, if used, will be a serious obstruction to the street. It is at most but matter of apprehension, and because such an evil may *possibly* arise, or because the track when laid, may *possibly* be abused, it does not lay the foundation for now intercepting the progress of the work, and preventing the laying down of the track. It will be time enough to grant relief when the *inconvenience* and certainty of the evil shall require it. Equity never interposes its *extraordinary* powers, upon a mere *apprehension* of mischief, however well founded. The mischief must be *certain,* and its approach perilous. It was upon this principle, that the Chancellor refused an injunction in the case of the Hudson and Delaware Canal

Co. *v.* New York & Erie Railroad Co. 9 *Paige*, 323 There it appeared, that the canal was located and constructed, for 20 miles, on a small bed dug out from perpendicular cliffs, so as to leave no room for a road between it and the river Delaware, except an exceedingly narrow space, so that the road, if made, must run alongside of the canal the whole way, at a distance of not more than 15 feet from it. And it was objected, among other things, that the use of locomotives would ruin the canal. But it was replied by the chancellor that it was "no objec-"tion to the location of the road upon the route of the " canal, that it could not be traversed by locomotives with-" out frightening the horses on the towing path, so as to " destroy the navigation of the canal. After the road is " completed, if the use of locomotives should be found to "have that effect, an injunction might be applied for to " restrain such use,. and compel the Company to draw their "trains over this part of the road by horse power.". *P.* 331. The same point was held in the case of Milham *v.* Sharp, before cited.

But even if it should be found from experience, that the frequent running of cars through the street, should, in a measure, *interrupt* the free passage of wagons, and other vehicles of travel, as heretofore, that would not necessarily authorize and require the Court to grant an injunction. To warrant such interference, the use must be *unreasonable*, or to the *exclusion of others*. Every use of a street by one person, to a certain extent, interferes with its use by another. And in proportion as the uses of a street are multiplied, will the convenience of each individual be *restricted*. But this does not render the multiplication of of uses a *nuisance*. On the contrary, the public highway

is subserving its highest and *best use,* when it is accom-- modating the largest number. Now, it will hardly be denied that the transportation of both persons and property, is more readily accomplished by the use of rail cars, than by any other mode. And when that mode of trans- portation is not *exclusive,* the public is a great gainer thereby. Indeed, it may safely be affirmed, that so far from presenting additional obstructions in a public street or highway, the rail car, when properly used, by its easier transit, and greater accommodation, has a tendency to diminish them.

It is in consequence of this great convenience to the *public,* that railways have been so far favored by the State, as to authorize in their behalf the condemnation of private property, as for public use. They are regarded in law as *benefits,* not as *evils.* Of the numerous cases we have examined on the subject, we have not found one in which a Railroad running into, or through a street of a city has been held, *per se,* a nuisance, or an injury to either public or private right; nor a case where an injunction has been granted to restrain the construction or use of a Railroad upon the ground of nuisance. Many, if not most of the cases presented stronger apparent reasons for relief than that under consideration.

The Lexington & Ohio Rail Road Co. *v.* Applegate, 8 *Dana,* 289, was an application to restrain the running of *locomotives,* and the further use of the Railway on *Main Street* in the City of Louisville. The Chief Justice, in pronouncing an opinion *against* the injunction, said, (*p.* 302)—"it must be an *extreme* and anomalous case, in "which an improved mode of transportation, which not "only facilitates passage, but promotes trade and com-

" merce through a city, shall be deemed nevertheless a
" nuisance.   It should never be so considered unless it
" unreasonably circumscribes the rightful use by others,
" who have an equal claim to the enjoyment of it."

Milham *v*. Sharp, 15 *Barbour*, 193, and Hamilton *v*.
The New York and Harlem Rail Road Co. *P*. 177, (already referred to) were cases of railways projected through
leading streets of New York, and Drake *v*. The Hudson
River Railroad Co. 7 *Barbour*, 508, was of the like sort.

The point in this latter case was seriously considered
by *all* of the judges, and concurrent opinions pronounced
thereon by each.   Chief Justice Jones, *P*. 504, says, " the
" actual existence of Railroads in other cities, and the ex-
" ample of the Harlem Railroad in our own City, which
" has now been in successful operation for several years
" under our own eyes, *conclusively* show, that the use of
" them in the streets of a city, if properly guarded and
" regulated, is compatible with the *trusts* of public streets,
" and the simultaneous use of those streets by other car-
" riages and vehicles, and for all the purposes to which
" public streets are dedicated.

So far then as any presumptions of law are concerned
in the present case, they are in favor of the defendants.
The road will be *presumed* to be a *benefit*, unless it otherwise appear from the special circumstances of the case.
But no such circumstances have been disclosed as to warrant the belief that this track will be either so laid, or so
used, as unnecessarily to hinder the free use of Front, or
any other street.

The chief ground urged in argument for distinguishing
this from some of the cases cited, was that *here*, parts of
Front street were *very narrow*, in consequence of being

washed away by the Ohio River, and so, it was said, there will be no room for both cars and wagons to pass safely. However it might be, were the track to occupy this narrow street in its present condition, and without change, it is proper to observe, that by the conditions of the resolution adopted by the City Council, it is made the duty of the defendants to fill out this street to its original width of sixty feet; an obligation which the defendants, by their answer assure us they intend immediately to perform. So that when filled out as required, the street will be vastly more convenient for public use than it now is. A temporary occupation of that portion of the street, if necessary for the purpose of better enabling them to comply with this stipulation, even though exclusive, and though it might work a transient evil to the plaintiff, would not lay the foundation for an injunction. This would be such an occupation as the city itself would have a right to take, for the purpose of improving its highway; and it may certainly confide the right to others for the same object. But in such case, the work must be done with suitable despatch; the occupation of the street must be reasonable; and not continued for the mere object of enabling the defendants to use the street for purposes of private gain.

The same remark applies to the supposed obstruction of the street occasioned by taking up the pavement, and encumbering the street with dirt, etc. whilst laying down the rails. If it be proper to lay the rails at all, any mere casual obstruction of the street during the work, if not *wantonly* made, would not be the subject of an action at law; much less of an injunction. Chapman *v.* The Albany & Schenectady Railroad Co. 10 *Barbour*, 360.

The magnitude of the interests involved in this en-
quiry, and the evil results which might follow from a
wrong decision in either direction, have induced the Court
to examine the case with much care, and no little anxiety.
On the whole, we are satisfied that the point of safety lies
clearly in denying the application.    We the more readily
adopt this conclusion, because the subject is not yet beyond
the control of the proper city authorities.    The widening
out of the street; the laying down of the rails; and the
running of cars thereon; are still within their proper su-
pervision.    We have no right at this time to suppose that
*either* will be done or attempted by the defendants in a
wrongful manner.    We have still less right to suppose that
should the same be wrongfully done or attempted, the pro-
per city authorities will not interpose to prevent, or to
check the evil.    Should our just expectations be disap-
pointed in this regard, the time will have arrived when ac-
tion on our part becomes necessary, and the appropriate
remedy will be applied.

At present, the injunction is denied.