[No. 4185.   Decided August 27, 1902.]

FIDALGO ISLAND CANNING COMPANY et al., Respondents,

v. FRANK WOMER et al., Appellants.

FISHERIES — LOCATION OF POUND NETS — END PASSAGEWAY.

Under Laws 1899, p. 194, governing the location of fishing
appliances, which gives locators of pound nets a right to extend
the length of such nets to 2,500 feet, but provides that there
shall be an end passageway of at least 600 feet between all
pound nets, the owner of one location has no right to extend
his pound net in the direction of a contiguous net, so as to shut
off the space of 600 feet prescribed by law for end passageway,
even though the combined length of the contiguous nets may
be less than 2,500 feet.

SAME — INJUNCTION — PLEADING — CERTAINTY OF MISCHIEF.

In an action by the owner of pound net No. 29 to enjoin the
construction of an extension of pound net No. 2565 so as to shut
off the end passageway of 600 feet between it and net No. 1766,
owned by a third party, an allegation that plaintiff is informed
and believes that the owner of No. 1766 will construct and ope-
rate a trap upon that location during the coming fishing season
does not show merely an apprehension of mischief for which an
action would not lie, inasmuch as the nuisance complained of is
not the probable operation of an unabandoned fishing location,
but the unlawful encroachment by the owner of trap No. 2565
upon the end passageway between that net and net No. 1766,
which would result in shutting off the run of fish to plaintiff's
trap.

SAME — METHOD OF LOCATING TRAPS — CONSTRUCTION OF STATUTE.

Laws 1899, p. 197, § 4, provides that "for the purpose of de-
termining end passageway a line shall be drawn parallel to the
general direction of the shore line for one-half mile on either
side of a proposed location, which parallel line shall intersect
the outer end of any location theretofore made, and maintained
as by law provided, and a new location shall be driven at least
six hundred feet distant at right angles from such base line."
Held, that the words "outer end of any location theretofore
made" refer to the end which is out toward the proposed new
location, and that, where the subsequent location is inshore
from the prior location, the line paralleling the shore line must

be drawn through the inner instead of the outer end of the location theretofore made.

Appeal from Superior Court, San Juan County.—Hon. GEORGE A. JOINER, Judge.   Affirmed.

*Kerr & McCord,* for appellants.

*Quinby, Wells & Brawley,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—Lying to the east from Lopez Island, in San Juan county, several pound net fish traps are located in the waters of Puget Sound, nearly on a line, as follows: No. 1850, owned by Carlisle Canning Co.; No. 2565, owned by appellant Frank Womer, and No. 1766, owned by Lummi Island Fishing Co.   To the northward of these traps is located No. 29, owned by respondents. The relative locations of these traps are shown by the following diagram:

The flood tides upon which the fish run in these waters approach these traps from the southeast, and run in a northwesterly direction.   Trap No. 2565 is the last location, and the one on account of which this case arose.   At

the time this action was begun the appellant was extending the length of trap No. 2565 until it encroached upon the end passage way between it and No. 1766. The effect of this was to cut off the run of fish from No. 29. The action was brought to restrain appellants from encroaching on this end passage way. From a decree restraining the encroachment, this appeal is prosecuted.

A number of errors are alleged, but all the errors are grouped and argued upon three assignments, as follows: (1). That the complaint and the findings of fact do not state facts sufficient to constitute a cause of action; (2) the findings of fact made are against the preponderance of the evidence; (3) the court adopted an erroneous method of determining the end passage way. The complaint alleges that the Lummi Island Fishing Co. is the owner of location No. 1766, and in August, 1900, redrove the location piles as required by law, and plaintiffs have been informed and believe that said company will .construct and operate a trap thereon during the coming season. The complaint further states:

"That afterwards, to wit, about the first day of April, 1901, the said defendant Frank Womer, aided and abetted by the defendant, the Carlisle Canning Company, a corporation, by and through the other defendants, the managing officers of said corporation, began the construction of a fish trap on the said Frank Womer's location, and in so doing wrongfully and fraudulently went out 600 feet beyond the outer end pile thereon and drove piles for the pot and hearts of said trap and are now engaged in finishing said trap, which, when completed as now constructed, will extend out to a point even with the inner end pile of the said Lummi Island Fishing Company's location, and if not enjoined from so doing they will finish said construction and will hang a web on said piles, including the pot and heart now driven, in which case there will be no end pas-

sage between said trap and the trap of the said Lummi Island Fishing Company when the same is constructed."

The complaint also alleges that the fish run upon the flood tide, that this tide flows across these traps to the northwest, and that the obstruction of the end passage way between locations 1766 and 2565 will deprive and cut off from plaintiff's said location the greater portion of the run of fish in that locality, and greatly injure plaintiff's location No. 29. The statute provides, at § 4, Laws 1899, p. 197: "There shall be an end passage way of at least six hundred feet . . . between all pound nets, . . . constructed and placed within the waters of Puget Sound in this state." It is argued by appellant that because the statute provides that a pound net may extend for a length of 2,500 feet, and since the plaintiff is not the owner of 2565 or 1766, and the entire length of these two locations is less than 2,500, that therefore plaintiff cannot complain when the entire distance is closed, because if the two traps were owned by one person that person, under the law, might legally extend his trap so as to cover the whole space occupied by these two traps. While this is probably correct, yet the law provides that between all pound nets, irrespective of the length, there shall be an end passage way of six hundred feet. While one person may construct a trap 2,500 feet in length, yet he is not permitted to construct two independent traps, no matter what their length, without leaving an end passage way between them of six hundred feet.

It is further argued by appellant that, because the respondents allege in their complaint that plaintiffs have been informed and verily believe that the owners of No. 1766 will construct and operate a trap during the season of 1901, that there is no such threatened injury as to warrant an injunction in this case, under the rule that "Equity

never interposes its extraordinary powers upon a mere *apprehension* of mischief, however well founded. The mischief must be *certain,* and its approach perilous." *Sargent v. Ohio & Mississippi R. R. Co.,* 1 Handy, 52; 1 High, Injunctions, 760. The injury here complained of is not from the construction of No. 1766, because that location is a prior location unabandoned, which may be operated at any time, and which the owner testified was to be operated during the coming season; but the injury comes from No. 2565, a subsequent location, which the complaint states was being unlawfully constructed so as to encroach upon the end passage way of 1766, and that the appellant is engaged in constructing and finishing the same, and, unless restrained, will continue to finish the same, and thereby make plaintiff's trap absolutely valueless. If it is true that the appellant encroached by the unlawful construction of his trap upon the end passage way of six hundred feet between his original location, No. 2565, and No. 1766, then, to the extent of such encroachment, appellant was constructing his trap in violation of law, and was therefore creating a nuisance *per se.* The nuisance was not only threatened, but appellant was in the act of creating it. Where it is shown that such nuisance causes special damages to the plaintiff, he may maintain an action to prevent the same. *Morris v. Graham,* 16 Wash. 343 (47 Pac. 752, 58 Am. St. Rep. 33); *Carl v. West Aberdeen Land, etc., Co.,* 13 Wash. 616 (43 Pac. 890). After a careful reading of all the evidence, we think the court found the facts in accordance with the preponderance thereof, that the facts sustain the allegations in the complaint, and that the complaint is sufficient.

It is next argued that the court adopted an erroneous method of determining the end passage way. The statute provides at § 4, Laws 1899, p. 197:

"For the purpose of determining end passage way a line shall be drawn parallel to the general direction of the shore line for one-half mile on either side of a proposed location, which parallel line shall intersect the outer end of any location theretofore made, and maintained as by law provided, and a new location shall be driven at least six hundred feet distant at right angles from such base line."

It was evidently supposed by the legislature that the first pound net located would be located so near shore that there would be no opportunity to locate another net nearer shore. In such event the application of the rule would be clear in all cases, and require no construction. But it was clearly the intention of the legislature to permit nets to be located inshore from other localities, provided there was room enough, but that in all cases there should be an end passage way of six hundred feet between traps. It could not have been meant that the parallel line to the general direction of the shore line should be drawn through the outer end of the prior location unless the proposed location was to be outside of such prior location. Where the subsequent location is inshore from the prior location, the parallel line must be drawn through the inner end of the location theretofore made, so as to be distant therefrom the required six hundred feet; otherwise locations would overlap each other, and thus defeat the provision that there shall be an end passage way of six hundred feet between all pound net traps. The words *"outer end of any location theretofore made,"* as used in the statute, must be held to refer to the end which is out towards the proposed new location, so that if the proposed location is in toward shore from the prior location the new location must be measured from the inshore end of the prior location. This is the construction placed upon the statute by the lower court, and is, we think, correct.

There is no error in the record, and the cause will be affirmed.

REAVIS, C. J., and WHITE, ANDERS, FULLERTON, DUN-BAR and HADLEY, JJ., concur.