**WHITE v COLUMBUS (city) et**

Ohio Appeals, 2nd Dist, Franklin Co

No 2321. Decided May 26, 1938

490

Donald F. Smith, Columbus, and Peter Vacca, Columbus, for plaintiff-appellee.

Don W. Wiper, Columbus, and E. W. Mc-Cormick, Columbus, Asst. City Attorneys, for defendants-appellants.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact from an order granting a permanent injunction of the plaintiff against the defendants, substantially as prayed in the amended petition.

On July 15, 1937, the plaintiff filed an amended petition, wherein he set out that on September 29, 1915, he became the owner of Lot No. 15 in Guilford Park Addition to the City of Columbus, Ohio, etc.; that continuously from the date of the acquisition of the property until the time of filing the petition and at that time he was the owner of said real estate.

The official capacities of the named defendants were set forth; that the plaintiff began the operation of a fruit business on the above-described premises on September 29, 1915, which business he had continuously operated from that date up to and including August 6, 1923, and thereafter to the date of the filing of the amended petition; that on August 6, 1923, there was no zoning ordinance in the City of Columbus, Ohio, and that by reason of the fact that on this date the plaintiff was in the lawful conduct and operation of his fruit business, he acquired a franchise and a vested right to use and occupy said premises for said purpose; that on August 6, 1923, ordinance No. 3410, known as Columbus Zoning Ordinance, was passed by the city council of the City of Columbus, effective shortly after said date; that the duly named commission under said ordinance proceeded to zone the City of Columbus and that the premises described was in one of the zones classified as an Apartment House District; that the original zoning ordinance was amended and that §10 of said ordinance, as passed and amended, defined a non-conforming use, as existed on August 6, 1923. It is averred that plaintiff's business was a non-conforming use under the terms of said ordinance.

It is further averred that on June 13, 1936, the city council of the City of Columbus, at a regular meeting of said council, unanimously passed the following ordinance or resolution, to-wit:

"BE IT RESOLVED BY THE COUNCIL OF THE CITY OF COLUMBUS:

"That the Director of Public Safety be and he is hereby requested to direct the Chief Inspector of the Division of Building Regulation to issue a permit to Edward White to maintain a fruit stand in the front yard of his home located at 1494 West Broad Street, said fruit stand being sixteen feet by three feet, constructed of wood and setting on trestles.

"BE IT FURTHER RESOLVED that said Director of Public Safety and the Chief Inspector of the Division of Building Regulation be and they are hereby absolved

of all responsibility for this digression from the established law.

"ADOPTED June 15, 1936.
FRANK C. KARNS,
"President of Council
ATTEST: HELEN T. HOWARD,
"City Clerk."

It is further averred that pursuant to said resolution plaintiff received from the Chief Inspector of Division of Building Regulations "a permit to construct and operate a fruit stand in accordance with the above-quoted ordinance", and that he has continued to operate his business at said stand according to the laws of the State of Ohio and the ordinance hereinbefore set forth and all other ordinances of the City of Columbus.

It is averred that plaintiff had on hands perishable goods of the value of $300.00 and did a business at and from the premises described in the amount of $600.00 per month.

It is further averred that on September 22, 1936, without any notice, he received and was served with the following:

"DEPARTMENT OF PUBLIC SAFETY
Division of Building Regulation
Columbus, O., 9-22-36.
"To. Mr. E. White,
"1494 West Broad Street.
"This is to advise you that an inspection of fruit stand located at 1494 W. Broad St. of which you are the owner, lessee, agent, superintendent or contractor in charge of the work, was made by this department on September 15th, 16th, 17th, 19th. I find that you are violating the resolution granted you by city council, permitting you to to use a stand 16x3 feet and in consequence the following order is issued:

"Discontinue all business at this address by Thurs. at 4 o'clock. (1494 W. Broad St.)

"This order is to be complied with within 3 days. Notify department immediately after compliance.

"Phones Bell, M-851. Citz. 4532.

"Failure to comply with this order will render you liable to prosecution according to law.

G. W. Matson, Inspector of Buildings
"By R. C. Gribben,
"Deputy Inspector."

The amended petition then sets forth §12 of the Building Code of the City of Columbus, and particularly §43 of said Code of 1930, which section is headed: "Con-demnation", and authorizes the Inspector of Buildings upon knowledge that any building or structure erected or in the process of erection in the City of Columbus is in such condition as to be dangerous to the health or lives of occupants thereof or the general public, or unsafe for the use for which the building or structure is intended, or in such a condition as to endanger the security of adjoining property, to notify the owner in writing, requiring such changes or removal to be made as he may deem necessary to correct the conditions which he describes, provided that he shall fix a time within which compliance with the notice shall be observed, not less than twenty-four hours from the time of the notice, except in an emergency.

It is further averred that the building is not unsafe and has not been condemned by the Chief Inspector of Buildings and the plaintiff has not received any written notice to make any repairs on said stand and that he has complied with ordinances hereinbefore set forth.

It is averred that defendant George W. Matson, as Chief Building Inspector, by reason of the quoted part of §43 of the Municipal Code of 1930, is without any legal authority to force plaintiff to quit business as hereinbefore set forth. The duties of the Inspector of Buildings, as provided in §3 of the Building Code, are set forth.

It is averred that if the arbitrary notice served on plaintiff by George W. Matson to discontinue the business at 1494 West Broad Street, Columbus, Ohio, be carried into effect, the plaintiff will suffer irreparable loss; that George W. Matson, Inspector of Building Regulations, is without authority at law and without jurisdiction of the person or property of the plaintiff and that if the order issued were complied with the petitioner would be deprived of the right to use his premises for the purpose of carrying out his lawful business contrary to the Constitution of Ohio and of the United States.

The prayer is that all of the defendants be enjoined from interfering with the operation of the business of plaintiff.

The joint answer of the defendants, insofar as pertinent to our question, sets up the full text of the zoning ordinance relating to non-conforming uses and avers that the plaintiff's business is not a non-conforming use, denies that the plaintiff has conducted his business as averred in the petition since the year 1915, avers that the City of Columbus is divided into five classes of use districts under the zoning ordinance

of said city, and that the plaintiff's real estate is classified as in an Apartment House District.

Sections 713, 714, 715, 739 and 741 of the zoning ordinance are set out in full. §713, relating to districts and zoning map and providing in part that:

"No building or premises shall be erected or used except in conformity with the regulations herein prescribed for the use, height and area districts in which such building or premises is located."

Section 714 sets out in detail what may be erected in a dwelling house district and 715 defines an apartment house district, in which no such buildings or structures may be erected as are permitted in a dwelling house district, and also lists certain other structures which may be erected.

Section 739 relates to amendments and §741 relates to penalties for violation of the zoning ordinance.

Section 741 provides:

"Any person or corporation who shall violate any of the provisions of this chapter or fail to comply therewith or with any of the requirements thereof, or who shall build or alter any building in violation of any detailed statement or plan submitted and approved thereunder, shall for each and every violation or non-compliance be guilty of an offense, and upon conviction thereof shall be fined not more than five hundred dollars, and each day such violation shall be permitted to exist shall constitute a separate offense. The owner or owners of any building or premises or part thereof, where anything in violation of this ordinance shall be placed or shall exist, * * * shall be guilty of a separate offense and upon conviction thereof shall be fined as herein provided."

It is further averred that the business which the plaintiff is conducting on his premises is not permitted by the zoning ordinance; that the Director of Public Safety did not comply with the request of the city council in its resolution of June 15, 1936, did not direct the Chief Inspector of the Division of Building Regulations to issue a permit to plaintiff as requested that no permit was issued.

It is averred that if it be found that the plaintiff has operated a fruit business on the premises described in the amended petition since September 29, 1915, to the date of said amended petition that plaintiff has

filed no application with the zoning board and received no special permit to extend a non-conforming use as provided in Subdivision 6 of §736 of the Columbus Code of 1930.

The reply of the plaintiff is substantially a general denial of the affirmative averments of the answer.

The cause went to trial upon the factual issues whether or not plaintiff had been conducting a fruit and vegetable business on and about the premises, as claimed in his amended petition and denied in the answer, whether or not there had been a violation of the zoning ordinance in that no permit had been issued to erect the structure which was being used for the operation of the business and to what extent the city had the right, under the zoning ordinance, to require the plaintiff to abate the conduct of his business on and about his premises.

We have set out the pleadings at considerable length, so that certain legal principles which we shall discuss will be the more readily appreciated.

It will be noted that no demurrer was filed to the amended petition, nor does the answer challenge the right of plaintiff to maintain the action of injunction upon the claim that he had an adequate remedy at law. The brief of the city does not touch this question but throughout the briefs of the plaintiff there are interspersed certain citations intended to support his right to maintain the action for injunction.

It is essential to the right of plaintiff to the equitable relief sought that it be averred and proved that he has no adequate remedy at law. The procedural action threatened is that the city proposes to arrest the plaintiff upon the order of September 22, 1936, wherein it is found that the plaintiff has violated the resolution of the city council, of date June 13, 1936.

The pleadings and the evidence proceed upon the assumption that the charge which the plaintiff will be required to meet if the defendants are not restrained is a violation of the zoning ordinance.

It is the general rule that equity will not interfere by injunction to restrain criminal proceedings. 21 O. J. 1231; Gustafson v City of Cleveland, 31 O.L.R. 642; Bernhart v Kearns, 12 O.N.P. (N.S.) 298. To this general rule there is the exception that when property rights will be destroyed or unlawfully interfered with, injunctive re-

lief may be granted. **East Hill Coal & Supply Co. v Cincinnati, 19 Oh Ap 396.** We do not question the application of this exception when the facts support it.

It is averred that property rights of the plaintiff will be destroyed but what do the pleadings and the facts disclose? If the city were permitted to institute its criminal proceedings in accord with the order to plaintiff of September 22, 1936, plaintiff would have full right to interpose any and all defenses which he had to such action. If the criminal proceedings involved a violation of the zoning ordinance the plaintiff could assert as a defense most of the matter averred in his amended petition. The city could not in any manner, during the proceedings and until their termination, interfere with the plaintiff's operation of his business, as conducted at the time of the filing of his amended petition. Only when there was a determination of the criminal case in favor of the city and against the plaintiff would the conduct of plaintiff's business be affected in any manner whatever. Upon the most severe interpretation which can be placed upon the purpose and effect of the proposed criminal proceedings against the plaintiff, there is no possibility of business interference or damage prior to conviction. This situation would not require the court to interfere by injunctive action with the enforcement of the law by the duly constituted authorities. Had the city taken advantage of its rights, either by demurrer or by special answer, we would have been required to sustain the demurrer or to support the special answer in accord with the principles heretofore discussed. Neither procedural step was taken by the city and it must be assumed that it preferred to make the issues on the facts. Then, too, if the plaintiff had stated a cause of action predicated upon the non-conforming use of his property under the zoning ordinance, the defense that he had violated the ordinance, if established, would preclude relief to the extent prayed in the amended petition, though relief might properly be granted against the enforcement of the resolution of September 22, 1936.

Although it is within the power of this court, on its own motion to dismiss the amended petition of the plaintiff, we shall not do so because it has been held that a party desiring to take advantage of the rule heretofore discussed must act promptly in calling the question to the attention of the court and that it should be raised by demurrer or answer before trial on the merits. **Miller v Longacre, 26 Oh St 291; Culver v Rodgers, 33 Oh St 537, 542; Sedaris v Riley, 27 N.P. (N.S.) 215.**

The object and purposes of an injunction are to prevent threatened injury which must be immediate and impending. **Reemelin v Mosby, 47 Oh St 570; Allison v Cincinnati, 13 O.D. (Re.) 1010, 2 C.S.C. R. 462.**

It is said in **Sargent v Ohio & M. R. Co., 1 Handy, 52:**

"Equity never imposes its extraordinary powers upon a mere apprehension of mischief, however well founded; the mischief must be certain of its approach perilous."

In the light of these pronouncements what was the impending danger to which the plaintiff would have been subjected had the city proceeded without interruption to begin criminal action upon its order of September 22, 1936?

It is basic that a criminal charge must be specific and that the defense thereto need only be directed to the charge. What, then, would be the order with the violation of which the city would charge the plaintiff? Obviously there was but one order to which the charge could be directed, viz., that of June 13, 1936. This order of the city council was in the form of a resolution, wherein the Director of Public Safety was requested to direct the Chief Inspector of the Division of Building Regulation to issue a permit to plaintiff to maintain a fruit stand in the front yard of his premises, as heretofore set forth.

It was further resolved that "the Director of Public Safety and the Chief Inspector of the Division of Building Regulation would be absolved of all responsibility for this digression from the established law."

At the time that this case came on for trial the foregoing resolution had, by action of the city council, been rescinded in its entirety. Neither the Director of Public Safety nor the Chief Inspector of the Division of Building Regulation issued a permit to plaintiff, nor did anything pursuant to the resolution.

The action of the city council by its resolution of June 13, 1936, was void ab initio. It was an unwarranted attempt to interfere with the established law of the zoning ordinance. Its language discloses that it is

nothing more nor less than an attempted evasion of the law and known so to be when enacted but this void resolution is the basis of the order issued to the plaintiff to "discontinue all business" at his residence at 1494 West Broad Street. Had this order been valid it did not purport to grant any right to plaintiff to erect a stand and conduct his business thereon but to suggest that an official issue a permit to the plaintiff so to do. The permit, if issued, would have been the only authority under the resolution to support any action taken by plaintiff in maintaining his fruit stand. It is evident that the city could not have secured a conviction against the plaintiff upon prosecution predicated upon a void resolution of the city council.

The only imminent danger to which the plaintiff by his amended petition was about to be subjected was a prosecution for failure to observe this void order of the city council. Thus, upon the issues drawn, the only injunctive relief which under the evidence could be claimed by the plaintiff would be to prevent the city from instituting this proceeding. If grantd, this injunction would not reach nor affect the right of the city in due form and by proper procedure to charge the plaintiff with a violation of the zoning ordinance in the conduct of a fruit and vegetable business on his premises and in his buildings at 1494 W. Broad Street.

The city at no time laid a foundation under its order of September 22, 1936, to charge the plaintiff with the violation of any section of the zoning ordinance and yet the whole issue upon which this case is submitted to this court is grounded upon the application of the zoning ordinance to the facts appearing in the conduct of plaintiff's business on his premises. The gist of the defense by its answer is the violation of the zoning ordinance. The only charge against the plaintiff is that he violated a void resolution.

The probability that the city eventually will, if not restrained, institute proceedings against the plaintiff for violation of the zoning ordinance does not afford proof of such imminence of danger to the plaintiff in his property rights as will support the intervention of a court of equity.

Finally, we consider the issues of fact which by common consent were presented to the court on the evidence. In so doing we are only expressing our opinion upon a cause which is argued and briefed but is not before us for decision. The defendant seeks no affirmative relief. The plaintiff prays for extended relief but can only secure that which his stated cause of action will support.

We shall not undertake to discuss in detail the testimony of the many witnesses but be content to draw general conclusions reached after careful perusal of the record in its entirety.

It will again be necessary to state certain legal principles which have application. The relief accorded by a court of equity upon the action of injunction is extraordinary. It is said in Cincinnati Gas, Light & Coke Co. v Bowman, 1 Handy 289, that:

"There is no power, the exercise of which is more delicate, which requires greater caution to deliver a sound decree, or more dangerous in a doubtful case, than issuing an injunction."

It has been held many times in Ohio that to entitle a party to an injunction his right must be clear. No rule in equity is better settled. 21 O. J. 1000.

In this case, if we could properly grant an injunction to the plaintiff, according him all the relief sought, the case would be at an end, but if we refused to make such an order and the plaintiff is arrested for violation of the zoning ordinance, he is not deprived of his right to urge in his defense all of the facts upon which he relies in this case, with the burden of proof to establish conviction upon the city by the degree required in criminal cases.

Section 10 of the zoning ordinance relates to non-conforming uses and in part is as follows:

"A non-conforming use existing on August 6, 1923 (the date of passage of the zoning ordinance) may be continued until such time as there is an abandonment of such use by removal of equipment, alteration or fittings or change in the essential purpose of such use, the mere cessation of such use without such removal, alteration or change shall not constitute an abandonment; and any property purchased or acquired in good faith for any non-conforming use, prior to said date, upon which property the work of changing or remodeling for such non-conforming use has been commenced and for which a building permit has been issued, may be used for the non-con-

forming use for which such changing or remodeling was undertaken, anything in this ordinance to the contrary notwithstanding. " " " Except on special permit as provided in subdivision 6 of §24, a non-conforming use shall not be extended; but the extension of a use to any portion of a building, which portion was arranged or designed for such non-conforming use on or before said August 6, 1923, shall be permitted. " " " " A non-conforming yard use, operated without such abandonment since August 6, 1923, may be housed to provide floor area not in excess of that of the yard so used, upon a special permit as provided in §24 hereof."

In this case, upon the pleadings of the evidence, there is no constitutional question, state or federal, properly raised. Clearly, the section just quoted protects any non-conforming user in all rights to continue such non-conforming use. The controversy on the evidence in this case is not as to the invalidity of any part of the zoning ordinance but as to the application of valid sections of said ordinance. If the plaintiff can bring himself within the meaning and purport of the non-conforming user section of the zoning ordinance he will be protected in any property right to which he is entitled. His rights do not accrue or are not vested by virtue of anything in the zoning ordinance but would be protected as against the zoning ordinance if it undertook to deny him any right which had accrued prior to the enactment thereof. The leading case of Village of Euclid, Ohio v Ambler Realty Co., 272 U. S. 365, involved the constitutionality of the greater part of the ordinance under consideration. Likewise, the cited case of Terrace Park v Errett, 12 Fed. Rep. (2d) 240, was directed to the unconstitutional feature of the ordinance and under consideration because unreasonable in that it made no exemption whatever to Errett in the operation of a gravel pit which was so used prior to and at the time of the enactment of the ordinance here under consideration.

It is our judgment that the plaintiff has not made, upon the facts appearing and the issues drawn by the evidence, such a clear and definite showing as to require the granting of the full relief sought.

It appears that in 1915 the plaintiff acquired the premises at 1494 W. Broad Street, which consisted of a lot with dwelling of seven rooms and bath, with a barn later used as a garage, a front and side yard.

The plaintiff with his family then moved into the residence and continuously thereafter lived there. He testifies that he purchased the property for business purposes. Upon moving into the dwelling plaintiff engaged in the business of selling fruits and vegetables. This business was carried on by a truck over a route in the City of Columbus, which he admittedly covered three days a week and which by some witnesses was fixed as five days per week. Some time prior to 1923, the exact date not being vital, it is probable that the plaintiff began the selling of vegetables and fruits from his garage, which was back of his residence. Some of this produce was sold from his truck. He likewise sold fruits and vegetables in the house, some of which were placed in the basement and in one and later possibly two refrigerators in the kitchen. No other part of the residence, prior to 1923, was utilized for the storage or display of fruits or vegetables. It is probable that customers who came to the house were accommodated in the kitchen, the basement or if necessary in other rooms on the ground floor in the residence.

The business of plaintiff grew until his gross receipts during some weeks of the year reached $600.00 per week. In the winter of 1936 the front room of the house was used for the storage and possibly the display of produce but had not been regularly in use for such purpose prior to that time. The extent to which produce was sold outside the garage and in the side or back yard is uncertain on the record, although it is probable that some produce was incidentally sold there and at times there were stands in that yard.

In the front yard the record does not satisfactorily disclose that prior to 1923 there was any general or continued use thereof in the conduct of plaintiff's business. It does not convincingly appear that any stands were placed in the front yard for display of produce prior to 1923. The plaintiff and two other witnesses offer testimony tending to disprove this conclusion. In our judgment the evidence upon the whole must be resolved against the claim of plaintiff as to the general and continued user of the front yard for business purposes prior to 1923.

It is possible, though not established satisfactorily, that there are some incidental casual, desultory use of the front yard by the placing of sacks of potatoes and other produce there. At Christmas time trees were regularly displayed in the front yard but whether this practice obtained before

1923 is not clear. At times the front porch was also used to place produce and possibly to display it and signs were placed on the porch, although that this was done prior to 1923 does not satisfactorily appear.

It is clear that the plaintiff did not, prior to a short time before June 13, 1936, the time when the council passed its first resolution, conduct his business in the front yard of his premises in the manner in which he was conducting it at the time when the order of September 22 1936, was promulgated. This use was clearly a departure from anything which had theretofore been attempted on the premises. Since the order of June 13, 1936, there is set up in the front yard a complete stand enclosed on three sides by canvas. This stand, most of the front yard and the front porch are occupied with a display of produce, soft drinks, etc. The front room and other parts of the house are also now used in the conduct of the business. In all, there is now set up at 1494 West Broad Street a complete fruit and vegetable business occupying not only the yard but parts of the house.

It is our conclusion that if the issue were properly drawn the plaintiff has not established by the degree of proof required that his use of the premises and yards would bring him within · the classification of a non-conforming user under the zoning ordinance, except in the use of the basement, kitchen and garage. There is considerable proof that the side and back yard next to the garage had been frequently used in connection with business of plaintiff. This user might be sufficient to prevent the city establishing that the plaintiff was violating the zoning ordinance in this particular. The proof, however, would not be sufficient to support an injunction against the city.

No question has been raised as to the right of plaintiff to conduct his business by truck, as heretofore carried on.

Because of the failure of proof if issue was drawn in this type of action respecting the extent of plaintiff's non-conforming use of his premises it is not necessary to discuss the effect of his failure to secure a permit to erect the stand from which he was conducting his business when this action was brought.

Injunction will be granted to plaintiff prohibiting the defendants or any of them from instituting any criminal action against plaintiff based upon the violation

of the resolution of the council of the City of Columbus of date June 13, 1936. Beyond that injunction will be denied.

GEIGER, J, concurs.

### DISSENTING OPINION

By BARNES, PJ.

In my judgment neither the plaintiff's petition nor the record presents a case, for relief by injunction.

The fact that plaintiff was threatened with arrest does not in any sense invoke equitable powers because he has a complete remedy at law to come in and defend. The majority opinion cites cases so holding and I think we should follow them, even though counsel for defendant have not, through their pleading or brief raised the question.

### ON APPLICATION FOR REHEARING

#### Decided June 13, 1938

By THE COURT

Submitted on application for rehearing. The application for rehearing sets forth 17 grounds together with a memorandum following consisting of several pages.

We have examined the application in its entirety and find that all the questions there urged and discussed were considered at great length in our original opinion. Our viewpoint respecting all of these questions appears in our original decision and to again consider seriatim the specific grounds of the application for rehearing would unduly prolong the discussion of the questions presented.

The office of an application for rehearing is not to again invoke an expression from the court upon matters which had theretofore been carefully and completely considered, but to direct the attention of the court to some questions or propositions of law or fact that had not been given attention. There is nothing of substance set forth in the application for rehearing which was not very carefully and completely urged by counsel and treated by the court in the opinion heretofore released.

The application for rehearing will therefore be denied.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.