**OHIO EDISON COMPANY and five others, Plaintiffs, v. McELRATH, Recorder et, Defendants. (Six cases.)**

Common Pleas Court, Trumbull County.

Nos. 63392, 63393, 63394, 63425, 63427, 63428. Decided February 2, 1955.

Hoppe, Day & Ford, By Henry Hoppe, James Frey, D. Bruce Mansfield, John R. White, on behalf of plaintiff Ohio Edison Company.

Mitchell Shaker, on behalf of plaintiff Stanley V. Wilder et al in Case No. 63393.

MacQueen & MacQueen, By James R. MacQueen, on behalf of plaintiff Delbert Garland in Case No. 63394.

R. C. Westenfield, on behalf of plaintiff David W. Grainger in Case No. 63425.

Mitchell F. Shaker, on behalf of plaintiff Carmen Di Cristofaro in Case No. 63427.

MacQueen & MacQueen, By James R. MacQueen, on behalf of plaintiff Ellis Bequeath in Case No. 63428.

Charles H. Anderson, Prosecutor Trumbull County, Keating & Polansky, By Stanley Polansky, Manchester, Bennett, Powers & Ullman. By Franklin B. Powers, on behalf of defendants.

## OPINION

By BIRRELL, J.

During the First World War the Carnegie Steel Company, in the expansion of its business, constructed a new steel mill in Weathersfield Township across the Mahoning River from the cities of Niles and Girard. About the same time the McDonald-Niles Real Estate Company purchased, and platted the surrounding farm land. From this platted land the Village of McDonald was ultimately incorporated, including the property of the Carnegie Steel Company. Here were constructed homes for the employees of the Steel Company, and a beautiful Village with paved streets, schools, park, recreational facilities, and all the necessary Municipal Buildings grew upon the 900 acres included in the boundaries of this incorporated Village. The great valuation of the Carnegie Steel Plant provided sufficient taxes to support the schools and the Municipal activities without an unduly high rate of taxation upon the properties of the home-owners.

All of the platted lands, however, were not included in the boundaries of the Village, and portions known as the McDonald-Niles Realty Company Plats, A, B, and C, constituting the lands west of the boundaries of the Village, were neither included nor improved. Although a few lots had been sold and individual houses constructed in these unincluded plats, much of these plats was later vacated by reason of the lack of demand for lots outside the Village, the insolvency of the Real Estate Company and the Receivership which ultimately overtook it. The families who had located their dwellings on these lots may have envied their more fortunate neighbors who had selected theirs in the Village where the expense of more extensive improvements was lightened by the presence and taxable-availability of the Carnegie Steel Company. They were partially benefitted, however, by having their territory taken into the McDonald Village School District. The Village of McDonald had never cared to annex these lands, perhaps because of their low tax value and lack of improvements which might cost the Village good tax-money to provide.

About the year 1952 The Ohio Edison Company, having previously acquired land along the Mahoning River north of the Plats, A, B, and C, began the construction thereon of an extensive Plant for the production of electricity which it distributes and sells throughout Northeastern Ohio and Western Pennsylvania including the cities of Youngstown, Girard, Niles, Warren, Sharon and many lesser communities. The value for tax purposes of this partially constructed plant for the tax year 1953 was reported by the County Auditor at $5,831,790.00 and officers of the Company estimated that perhaps $15,000,000.00 or more would be spent in improvements upon its property before the Plant was completed, thus finally creating a rather substantial tax-valuation.

Shortly after the coming of The Ohio Edison plant dreams of annexation to McDonald Village again blossomed in the hearts of the inhabitants of Plats A, B, and C, and a petition for this purpose was prepared and application made to annex not only plats A, B, and C, but certain adjoining farm lands, together with the Ohio Edison property (O. E. Ex. No. 14). Unfortunately the Trumbull County Commissioners refused to consent to such annexation. Shortly thereafter a petition was filed with the Weathersfield Township Trustees to incorporate the same lands into a Village of Hillcrest. Upon vote of the inhabitants of this area the application was carried and the Trustees filed the required transcript and papers with Marybelle McElrath, the Recorder of Trumbull County (O. E. Ex. No. 1), Defendant in these actions.

Now, under the provisions of §707.11 R. C., and within the ten days provided by §707.20 R. C., petitions for injunction "restraining the Recorder from making the record and certifying the transcript," were filed by the following parties:

Ohio Edison Co., on its own behalf, Case No. 63392.

Stanley K. and Ann Louise Wilder, owners of property in Niles City School District, Case No. 63393.

Delbert Garland, owner of property in Weathersfield Township, Case No. 63394.

David W. Granger, owner of property in Niles City School District, Case No. 63425.

Carmen Di Cristofaro, owner of property in Niles City School District and Weathersfield Township, Case No. 63427.

Ellis Bequeath, owner of property in the area sought to be incorporated and in Weathersfield Township School District, Case No. 63428.

The foregoing six cases were consolidated for the purpose of the trial, and are before the Court for determination upon the pleadings, evidence, arguments and Briefs.

The grounds relied upon by the Plaintiffs are those set forth in §707.11 R. C., which reads as follows:

"Within sixty days from the filing of the papers relating to the incorporation of villages by the board of county commissioners with the county recorder as provided by §§707.08 and 707.09 R. C., any person interested may make application by petition to the court of common pleas, or, if during vacation, to a judge thereof, setting forth the errors complained of, or the inaccuracy of the boundaries, or that the limits of the proposed corporation are unreasonably large or small, or that it is not right, just or equitable that the prayer of the petition presented to the board be granted, or containing any or all of such averments, and praying an injunction restraining the recorder from so making the record and certifying the transcript."

These grounds will be discussed in the order therein set forth.

### Errors Complained of

Few errors on the part of the Trustees in the proceedings submitting the question of incorporation to the vote of the electors are complained of, probably because that matter was litigated and carried to the Supreme Court with the result set forth in the case of **State, ex rel. Moore v.**

Trustees of Weathersfield Township, 161 Oh St 38. It is urged that the Trustees had no jurisdiction to act upon territory which includes platted lands, resting this suggestion upon the argument of the dissenting opinion in the case of Wachendorf v. Shaver, 149 Oh St 231, which dissenting opinion coincided with the opinion and decision previously made in that case by the Common Pleas Court, 33 O. O. 458. In this respect, however, this Court is bound by the majority opinion of the Supreme Court ably rendered by our own Judge Carter and upholding the right of Trustees to include "platted" as well as "unplatted" lands.

### "Inaccuracy of the boundaries"

Sec. 707.04 R. C., among other requirements of the Petition for incorporation, requires: "(A) An accurate description of the territory embraced within the proposed Municipal Corporation." It is claimed that the description is inaccurate in three respects: to-wit, the point of beginning, the northeast corner and the easterly courses of the northern boundary. The claim of inaccuracy of the point of beginning is untenable since it was discovered that the Trumbull County map (Bequeath & Garland Ex. No. 5) is incorrect in locating the north line of the Village of McDonald along the south bank of the Mahoning river. The official description contained in the Petition for Incorporation of McDonald Village (Defendant's Ex. H.), which incorporation was authorized by the Board of County Commissioners September 17th, 1918, located that line "along the center line of Mahoning River." Thus there is a "common point in the corporation lines of the Village of McDonald and the City of Niles in the middle of Mahoning River and the center line of Olive Street Extension," which would not have been a fact had the boundary line of McDonald Village been along the south bank of the River.

The easterly courses of the northerly boundary of the proposed Village of Hillcrest and its north-east corner, however, are inaccurate. This boundary, as included in the amended description used in the petition, starting from the last "accurate" point in the description, the whole of which follows for the purpose of properly portraying the error (emphasized in the description) is as follows:

"Situated in the Township of Weathersfield, County of Trumbull and State of Ohio and known as being parts of Section 6 and 7 in said Township and bounded and described as follows: Located in Section 6 of said Township and beginning at a common point in the corporation lines of the Village of McDonald and the City of Niles in the middle of the Mahoning River and the centre line of Olive Street Extension; thence westerly along the southerly easterly and southerly corporation lines of the City of Niles to the east right of way line of Weathersfield Township Road No. 63—Section D.: Thence southerly along the east right of way line of said Township road to the northerly right of way line of County Highway No. 64 E: thence in a southeasterly direction along the northerly line of County Highway 64 E. to a point in the south line of aforesaid Section 7 in said Township; thence easterly along the south line of Section 7 to the east line of said Section 7 and the centre line of what is now known as McDonald Avenue; thence along the center line of McDonald Avenue and the east line of Section 7 in a northerly

direction to the corner stone where sections 7, 3, 6 and 2 in Weathersfield Township come together, thence continuing in a northerly direction a distance of approximately 1310 feet to a point in the common line of Sections 6 and 3 in said township; thence continuing along a line in a southwesterly direction on a radius of 2110.08 feet and through an arc of 917.23 feet to a point on a tangent; thence along said tangent with a course of S. 54° 58' W. to a point in the centre line of Olive Street Extension; thence northwesterly along the centre line of Olive Street Extension a distance of about one hundred forty five (145) feet to the centre line of the Mahoning River and the place of beginning."

As one carefully follows the description from "the corner stone where sections 7, 3, 6 and 2 in Weathersfield Township come together," one finds the next course reads—

"thence continuing in a northerly direction a distance of approximately 1310 feet to a point in the common line of sections 6 and 3 in said Township,"

it will be immediately noticed that the point to which this course of approximately 1310 feet leads is not definitely located, for we are told only that it is "approximately 1310 feet" northerly "in the common line between sections 6 and 3." The northerly end of this course should be the north-east corner of the proposed Village in addition to being the point of commencement of the succeeding course. Thus, not knowing from where to start, the next course cannot be properly platted both because of the foregoing defect as to point of commencement and because of the inaccuracy of the course itself, as will be apparent on examination.

The easterly portion of the northerly boundary from the uncertain point above discussed, as set forth in the description is as follows:

"Thence continuing along a line in a southwesterly direction on a radius of 2110.08 feet and through an arc of 917.23 feet to a point on a tangent."

The term "in a southwesterly direction" is very broad and may indicate any direction within the 90° spread between a "southerly" and a "westerly" direction. Nor are we aided in this respect, as one might expect to be, by the remaining courses, to locate the point to which this course leads, which point, should be the beginning of the succeeding course. The succeeding course is described as follows:

"Thence along said tangent with a course of S. 54° 58' W. to a point in the center line of Olive Street extension."

This point is in the center line of Olive Street extension all right. but where? The final course in the description, which should fix the definite ending point of this so-called tangent course, is also uncertain: to-wit:

"Thence northwesterly along the center line of Olive Street Extension a distance of about 145 feet to the center line of Mahoning River and the place of beginning."

Again the indeterminate distance of "about 145 feet" prevents the location of the ending point of the courses described as "on a radius of 2110.08 feet * * * to a point on a tangent" and "thence along said tangent to a point in the center line of Olive Street extension."

To these courses there is neither accurate beginning nor accurate

ending. They float without anchor to the extent of the elasticity of the uncertain words: "about" and "approximately."

Not only are the point of beginning and ending of these two courses uncertain but the curved course of 917.23 feet is inaccurately described. The center of the circle, of which 2110.03 feet is the radius, is not located. This center may be either southeast or northwest of the 917.23 foot arc. Consequently this arc, although running in a generally southwesterly direction may bend either to the right or to the left depending upon where the center of the circle is located. It can easily be seen that, even if the beginning and ending of this "917.23 feet" course were anchored, the course itself might bend either way over this arc to the extent of an area in the shape of a pointed ellipse. For this reason alone the location of this boundary is most impossible to determine.

To illustrate the inaccuracy of this particular course, and the ease with which it could have been accurately described, attention is directed to the description appearing in the deed from the Real Estate and Improvement Company to the Carnegie Steel Company, recorded at Vol. 322, pp. 194-6 Trumbull County Records of Deeds (Deft's Ex. No. A), the pertinent portion of which is emphasized in the following copy:

"Beginning at a point in the dividing line between property of the Grantor and property of the Grantee at the Northerly corner of the tract hereby conveyed, said point being also on the dividing line between great lot 3 and great lot 6 of (Weathersfield) Township and distant 200 feet northwardly measured in a radial direction from the center line of the Baltimore and Ohio Railroad; thence by said dividing line between great lot 3 and great lot 6 and by lands of the Carnegie Steel Company S. 3° 48' W. 103.22 feet, more or less to a point distant 100 feet northwardly in a radial direction from the aforesaid center line of the Baltimore and Ohio Railroad; thence parallel with said center line and 100 feet distant radially therefrom in a southwesterly direction by a curve to the left with a radius of 2010.08 feet for a distance of 848.88 feet to a point of tangent; thence still parallel with and 100 feet distant from the center line of the Ealtimore and Ohio Railroad S. 54° 58' W. 209.52 feet to a point on the north-easterly side of the highway approach to the Niles-McDonald Bridge over the Mahoning River; thence by the northeasterly side of said highway approach N. 49° 22' W. 103.21 feet to a point on the line of lands of Carnegie Steel Company and distant 200 feet northwestwardly at right angles from the center line aforesaid of the Baltimore and Ohio Railroad; **Thence by said lands of the Carnegie Steel Company and parallel with said center line of the Baltimore and Ohio Railroad N. 54° 58' E. 235.08 feet to a point; thence still by same and still parallel with said center line of the Baltimore and Ohio Railroad Northeastwardly by a curve to the right with a radius of 2110.08 feet for a distance of 917.23 feet to the place of beginning.**"

It might be surmised that possibly the courses in the description of the proposed Village of Hillcrest, which the author thereof was attempting to follow in reverse, are intended to be the northerly courses of the above description. Notice how this accurate description first ties the beginning and ending of its courses with known objects and

readily located properties. Also note that the curved courses in each instance in addition to being located and guided as parallel with known curves, are properly described as being curves "to the right" or "to the left." Comparing this accurate method of describing such courses it is more readily seen how inaccurate and uncertain is the description of this portion of the boundaries of the proposed Village of Hillcrest.

In the case of State, ex rel. v. Trustees, supra, it was determined that it was proper for the incorporators to correct an obvious error in the description before the Trustees had acted on the petition. It was held that correction of that particular error (change of the figure 5 to the letter S in the expression 5.54°) did not prejudice the incorporators or render their procedings void. At the time of that hearing although "inaccuracy" was then claimed no explanation was made of the inaccuracy of the courses above set forth and no evidence was presented to illustrate or clarify these deficiencies. This Court, which likewise heard that case, was not instructed at that time in the mysteries of such curves and arcs nor taught the requirements of accurate description in this particular. And this Court must admit that the inaccuracy of this part of the description was then overlooked. Any claim of res adjudicata, however, cannot be sustained because the present case is not between the same parties. Only one of the then parties appears in one of the present cases in the person of Carmen Di Cristafaro, who at that time appeared in the character of one of the Board of Trustees of Weathersfield Township, and who here appears in case No. 63427 as an individual owner of property affected by the proposed incorporation. That no inaccuracy was shown in that previous hearing is not believed to bar the Court from recognizing the inaccuracy at this hearing.

While the word "accurate" does not permit of comparative degrees, such as "accurate" "more accurate" and "most accurate," the Statute (§707.14 R. C.) defines the extent of an inaccuracy sufficient to weigh upon the Court's decision as follows: "If the boundaries are found to be so inaccurately described as to render indefinite or uncertain the limits or extent of the proposed Municipal Corporation." One might suppose, or arbitrarily determine, that the proponents of this corporation intended to describe certain points and locations, but they did not do so. Nor does the use of the term "accurate" in the Statute authorize the Court to speculate as to the intention of the proponents, or to determine where those indefinite points and inaccurate boundaries should be.

### Limits unreasonably Large or Small

There are Municipal Corporations in Trumbull County some larger and some smaller than the proposed Village of Hillcrest. Speculation as to how the finances of a city may be handled, or how inadequate may be the income of a Village, should not in itself determine the right to incorporate. The officers of many small Villages are often inadequately compensated, if at all. To be successful doubtless the area of a corporation should be cohesive, but it may include both platted and unplatted land, whether residential, commercial or industrial. Farm land is never necessarily benefitted by being included, except that its potential value may be increased by the hope that some day it may be required for residence purposes. Nor that some of the inhabitants were, and still

244

may be, opposed to incorporation cannot prevent its accomplishment—the Legislature having decreed that where application is made to Township Trustees the election determines this question. Secs. 707.17, 707.18 R. C. It is unfortunate that the promoters may draw the boundaries to include some lands which may be unnecessary to the proposed Village, but a Court cannot interfere unless the size is **unreasonably** large or small, which to this Court does not seem here apparent.

Views of Ohio Trial Court Judges on these subjects are contained in the following cases.

**Brock Park v. Cleveland,** 26 O. O. 536; Libby v. Paul, 17 N. P. N. S. 433; Shipbaugh v. Kimball, 7 N. P. N. S. 514; Hall v. Siegrist, 13 O. D., 46.

### Right, Just or Equitable

The outstanding fact in this proceedings is the extremely great value for taxation purposes of the Ohio Edison property compared with the taxable value of the remainder of the property within the proposed Village. The values on the 1953 tax duplicate, the last one in effect at the time of hearing of this case, were:

| | |
|---|---|
| Ohio Edison property: | $5,831,790.00 |
| all other property: | 772,588.00 |

Testimony was offered that the Ohio Edison Company expected to expend $15,000,000.00 in construction work before completion of its Plant and that its tax value will be greatly increased from the above figure upon completion. It is also estimated that the Ohio Edison Company property will be called upon to pay as high as 95% of the tax revenues of the proposed Village.

This testimony was not refuted. Citizens of the proposed Village testified that they expected revenue from the Ohio Edison Plant would pave their streets, build their sidewalks, supply sewers, street lights and all needed improvements for their Village, and they freely echoed the Secretary of the McDonald Heights Improvement Club in her testimony that it "would be impossible to incorporate if the Ohio Edison and the Baltimore and Ohio (Railroad) property were excluded." A relatively small number of people expect here, to acquire their local improvements, and support their Municipality by taxation of this comparatively large taxable Ohio Edison property.

The following specific objections are raised by the Plaintiffs to this new proposed Municipal Corporation: (a) Plaintiffs who pay taxes in Weathersfield Township state that their Township will be deprived of substantial tax revenue now received by it from this territory which the County Tax Commission will be obligated to award to the new Municipality for the benefit of the comparatively few Villagers of Hillcrest.

(b) Plaintiffs whose children attend Weathersfield Township schools and who pay taxes in Weathersfield Township School District, a portion of which is included within the proposed boundaries, object to the loss of Ohio Edison revenue from their school district.

(c) Plaintiffs from Niles City School District, in the boundaries of which the land on which the Ohio Edison plant is being constructed has been included since before 1900, are haunted by the fear that their District will ultimately lose the revenues from those lands These increasing revenues have been a great help in the struggle which the Niles City

School District, together with all other school districts, are having to maintain the high standards of their schools and meet their expenses.

(d) The Ohio Edison Company itself feels that it owes no obligation to support or maintain the residents of Hillcrest Village.

(a) With reference to Weathersfield Township's loss of tax revenues, the mere disarrangement of tax revenue is not a ground for prevention of the incorporation of new Municipalities. If this were a valid objection, probably no new Municipalities could ever be formed. To be deprived of revenue relied upon by Township Officials may disrupt township business, but the claim of a new Municipality is that it will take care of its own needs, which thus relieves the Township of their expenses. And this is so, even though the Township Trustees may feel that they have offered to do all in their power to construct improvements which could be secured through assessment on abutting property, a method of payment not acceptable to Hillcrest inhabitants.

(b) and (c) with regard to revenues of the Weathersfield Township, and the Niles City, School Districts, it is shown that these established districts serve practically all of Weathersfield Township, a generally thickly populated territory covering an area of nearly twenty-five square miles. Whereas the sparsely settled territory of proposed Hillcrest is only about one square mile. The platted portion of Hillcrest already is a part of McDonald Village School District. The comparative taxable values of these Districts are:

|  | Pupils | Taxable Valuation per pupil |
|---|---|---|
| McDonald Village (includes McDonald and the platted portion of Hillcrest) | 633 | $24,000.00 |
| Niles City | 3000 | 16,000.00 |
| Weathersfield Township (includes farming lands of Hillcrest) | 704 | 13,700.00 |

Were the valuable Ohio Edison property to be transferred to McDonald Village School District, the taxable valuation per pupil in that comparatively small district would be increased to approximately $40,-000.00 per pupil, with corresponding reduction of per-pupil-valuation in Niles City and Weathersfield Township Districts.

It is pointed out that the mere incorporation of a new Village does not of itself alter or change the boundaries of existing school districts. Former §4687 GC, which created a new Village School District with the incorporation of each new Municipality, was repealed in 1943, and no new similar provision was ever enacted in its place. The Township District boundaries and those of McDonald Village District would remain the same until, or unless, altered by the Trumbull County Board of Education which has jurisdiction over these districts. The Niles City District is not subject to be changed by the County Board, and could be altered only by annexation of Hillcrest Village to another City or Village (§3311.06 R. C.). Since this is not an annexation proceedings, nor has there yet been any action of the County Board, nothing in this incorporation proceedings could alter these district boundaries. The Niles City

School District, especially, and all other Plaintiffs fear that annexation is Hillcrest's next stop, possibly because the promoters of the corporation had first attempted to annex this territory to McDonald, and immediately upon the refusal of the Trumbull County Commissioners to approve such annexation, had filed their petition for incorporation of the same territory with the township Trustees in this case, and because someone of the McDonald Heights Improvement Club at a meeting about that time had suggested, or advised, to let annexation wait until after incorporation was secured.

Their fears seem to be strengthened by an inference drawn, rightfully or wrongfully, from a letter written by Ohio Edison Company in answer to a suggestion apparently made by the proponents of annexation, which letter appears as Defendant's Ex. E. as follows:

"Dear Mr. This is in answer to your letter of March 20th., addressed to Mr. H. A. Stoddard regarding a proposed annexation to the Village of McDonald and to report that the officials of our company feel that. for the sake of obtaining a reduction in taxes, the company should neither oppose nor assist in the promotion of any annexation or other procedure which would result in a change in taxing district boundaries.

"I feel sure that you will agree that our company, being a public utility serving the entire community, cannot very well do otherwise than take a neutral position with respect to the proposed annexation at McDonald.

Yours very truly"

The inference from this letter is that "bait" was offered the Ohio Edison in the form of lower taxes, if the Ohio Edison Company would agree to annexation to McDonald Village. A territory comprised of the present Village of McDonald and the proposed Village of Hillcrest, including the extremely valuable properties of the Carnegie Steel Company and the Ohio Edison Company, with the few inhabitants and comparatively small municipal expense, should have a very low tax rate and no serious prospects ever of any large increase. Such a prospect would be very tempting to anyone, and especially to large corporations with valuable property subject to local taxes.

Such possibility and steps to accomplish it are not in themselves unlawful. The inference above suggested may have no basis in fact. The feared annexation may never occur. The possibility, however, gives pause for thought. It does raise a question of whether it is equitable or wise that the allocation of such a valuable taxable property as that of the Ohio Edison Company should be placed in the hands of the comparatively few (283 voted for incorporation, 34 against) inhabitants of the proposed Hillcrest Village.

(d) The Ohio Edison Company objects to this incorporation for the reason that it owes no debt to the Hillcrest Villagers, has not been helped or aided by them, and thinks it should not be taxed necessarily for this grasping Village's benefit.

The land on which their plant is constructed is separated from former Plats A, B, and C, by the right-of-way of the Baltimore and Ohio Railroad which is elevated by solid fill above the bordering lands. No road or passageway from Ohio Edison to other portions of Hillcrest exist

within the Village limits. To reach the Ohio Edison, Hillcrest Villagers must travel a township road outside the Village.

No resident of the Village works for Ohio Edison. Hillcrest furnishes nothing to Ohio Edison, neither water, sewers, telephone, disposition of waste, fire protection, police protection, passage to the outer world, shopping center, or recreation facilities. Nor does it hold out promise of ever furnishing anything, except as such facilities may be acquired, or built, or developed by the tax-revenues to be secured from Ohio Edison.

Ohio Edison has attracted no persons of Hillcrest to settle near its plant, nor have the present inhabitants been attracted to invest their money on account of its presence or its employment possibilities. Nor has the plight of the Villagers been brought about or aggravated in any manner by Ohio Edison's locating near them.

Ohio Edison suggests that if it is beholden to anyone, it is to Niles City, which furnishes its water, its fire protection, its police protection, space for its disposal of waste, access to the outer-world, substantial market for its product not only by Industry, but for home use as well.

Ohio Edison is a corporation. It has no voice or vote in the incorporation of the territory which it occupies, nor in annexation of that territory to a city or Village should surrounding inhabitants seek such an annexation. It cannot benefit from the schools to which it contributes its taxes. It contributes only the valuable real estate with buildings, machinery, and personal property to be taxed for the benefit of surrounding political subdivisions. Its own desires are of no moment. It must expect to be taxed, and the legal imposition of additional taxes constitutes no valid objection to incorporation of the proposed Village. It might be likened to a gold mine subject to exploitation taxwise by the general public, as far as this case is concerned.

**What is the duty of the Court in determining what is "right, just and equitable?"**

The original action of the Ohio Legislature on the subject of incorporation of Villages, passed May 3rd, 1852 (50 O. L. 223), and which in the revision of 1878 became §1564 R. C. provided:

"The Court or Judge shall hear the petition (praying for injunction) in a summary manner and may hear evidence, and if no error is found in the proceedings and no inaccuracy in the boundaries, the petition shall be dismissed * * *. But if error is found in the proceedings or the boundaries are so inaccurately described as to render indefinite and uncertain the limits or extent of the proposed corporation, then the Court shall make an order enjoining the recorder," etc.

Originally also the commissioners were required (§1558 R. S.) to determine whether the proposed corporation "shall be deemed right and proper". (66 O. L. 151 No. 14.)

Under this form of the Statutes the case of **Hulbert v. Mason,** 29 Oh St 562, was carried to the Supreme Court (1876) and it was decided that the "Application (to the Court) is not in the nature of a bill in equity or of a civil action, but of a proceedings in error," (from the action of the County Commissioners). In that case the determination of what is "right and proper" respecting incorporation had been submitted to the "discretion of the Commissioners" and the Court's juris-

diction was held to authorize only a review of errors or irregularities in the proceedings before the Commissioners.

Since that date the Statutes have been amended and the jurisdiction of the Common Pleas Court has been changed from that of a "summary" inquiry where the Court "may hear evidence," to a full-fledged trial wherein the Court itself is authorized to determine whether "it is right, just and equitable that the prayer of the petition (for incorporation) be granted." (Secs. 707.11, 707.14 R. C.) The Legislature has greatly enlarged the jurisdiction of the Court. Its power now is greater than the simple "discretion" of the Commissioners.

"Under §3535 GC (§707.14 R. C.) as it now exists, the injunction proceedings * * * presents certain issues that we commonly describe as judicial. The function of the Court * * *is to try the issues * * * and to administer justice according to the evidence." **The Geauga Lake Improvement Ass'n v. Lozzier, 125 Oh St 565 at p. 574.**

The terms "right" and "just" bear the connotation of lawful, but the term "equitable" adds the element of "fairness." 15 Words and Phrases, pp. 4, 132-3. "Equitable" has reference to the extensive equitable jurisdiction of Courts of Equity, which were originally established to ameliorate the hard and rigid rules of the Courts of Law, and, as stated in Pomeroy's Equity Jurisprudence, 5th Ed. (Introductory Chapter, No. 67, pp. 89-90 summarizing the Nature of Equity.)

"consists of those doctrines and rules, primary and remedial rights and remedies, which the common law, by reason of its fixed methods and remedial system, was either unable or inadequate, in the regular course of its development, to establish, enforce, and confer, and which it therefore either tacitly omitted or openly rejected"

"Its great underlying principals, * * are unquestionably principals of right, justice, and morality, so far as the same can become elements of a positive human jurisprudence; and these principals being once incorporated into the system, and being essentially unlimited, have communicated their own vitality and power of adaptation to the entire branch of the national jurisprudence of which they are, so to speak, the substructure."

See also, **Wagner v. Armstrong, 93 Oh St 443,** Opinion by Nichols, C. J. at pp. 454-457, and **Packing Company v. State, 100 Oh St 285,** concurring Opinion by Wanamaker, J. at pp. 302-304.

Considering the prayer for incorporation from an equitable standpoint it appears unfair for the inhabitants of any territory to arrange their limits so that 95% of their tax burdens will be thrown upon a new-coming industry to their vicinity. Had such industry grown up in their midst, waxed rich with their help or prospered by reason of their contributions, justification of inclusion upon their tax-duplicate of its value might be more evident.

It appears, therefore, to the Court, in accordance with the well-established maxim that "Equity delights in equality," that it is inequitable to permit a small number of people who have no connection with this large and valuable industry to monopolize the tax revenues thereof for the sole purpose of building and improving the streets and conveniences of their individual properties, or providing the local expense of their small village.

Nor is it equitable for such a small segment of the population to be granted control over, and the power to allocate for taxation purposes, such valuable taxable territory solely for their own benefit.

For the reasons above set forth the Court finds both (1) that the boundaries above referred to are so inaccurately described as to render indefinite and uncertain the limits or extent of the proposed corporation, and (2) that it is not right, just or equitable, that the prayer of the petition, presented to the Board of Township Trustees, for the incorporation of the proposed Hillcrest Village be granted. It is therefore, ordered, that the County Recorder be enjoined from making and/or certifying the record of such proceedings.

The County Recorder should not be required to pay the costs of this proceedings, nor should Trumbull County bear this expense. Rightfully the promotors of the unsuccessful incorporation should pay the costs herein but they are merely nominal parties to these proceedings. Each party will, therefore, be required to pay his or its own costs.

Bond for appeal, if desired, will be fixed at $300.00. An entry may be prepared accordingly.