become loose from the pile and fallen to the floor, thus causing appellee's injury;

And it being the law of Ohio that the operator of a store who invites people into his premises to transact business must exercise toward them ordinary care to maintain the premises in a reasonably safe condition, **Campbell v. Hughes Provision Co., 153 Oh St 9, 41 O. O. 107,** 90 N. E. (2d) 694; **J. C. Penney Co., Inc. v. Robison, 128 Oh St 626,** 193 N. E. 401, 100 A. L. R. 705; S. S. Kresge Co. v. Holland, 6 Cir., 158 F. (2d) 495, 498, and Ohio cases there cited;

And there being substantial evidence to support the verdict of the jury;

The judgment of the District Court is ordered to be affirmed.

**McCLINTOCK et, Plaintiffs, v. CAIN, Clerk, Defendant.**

Common Pleas Court, Franklin County.

No. 194388. Decided December 19, 1956.

556

John E. Palcich, Columbus, for plaintiffs.

Chalmers P. Wylie, City Atty., Russell Leach, Chief Counsel, Harrison Smith, Jr., Special Counsel, Columbus, for defendant.

## OPINION

By BARTLETT, J.

**MOTION OF DEFENDANT SUSTAINED FOR JUDGMENT OF DISMISSAL AT CLOSE OF PLAINTIFFS' CASE AT PLAINTIFFS' COSTS.**

The plaintiffs in this action seek to enjoin the defendant, as Clerk of said City, from certifying to the Council of the City of Columbus the transcript of the proceedings of the Board of County Commissioners, ordering the annexation to said city of some 359 acres situated in Sharon Township of this county, and the accompanying map or plat, and to further enjoin the defendant from any further proceedings with respect to said proposed annexation.

The case has been submitted upon the pleadings, the evidence and the briefs of counsel.

At the close of plaintiffs' case, counsel for the defendant moved that the Court grant a judgment of dismissal and counsel for the plaintiffs and the defendant have submitted their respective briefs on said motion.

We shall first discuss certain controlling principles in a case of this nature, and thereafter will determine the specific issues involved, in the light of such principles and the decisions of the courts thereon.

The burden of proof is upon the plaintiff seeking an injunction in an annexation petition. Lamneck v. Cain, Case No. 191,454, dockets of this court, by Gessaman, J.; Roush v. Barthalow, No. 179742, dockets of this court (105 N. E. [2d] 85), Rutherford, J., sitting in this county by assignment. The Roush case was affirmed by the Court of Appeals in 104 N. E. (2d) 697, and the appeal therefrom was dismissed by the Supreme Court in 156 Oh St 452. See also 21 O. Jur. Injunctions, Sec. 202, p. 1280.

Clear proof, rather than mere preponderance of the evidence, is required in such cases. Draper, J., in **Dunford v. Cain**, Case No. 194,082, dockets of this court; **21 O. Jur., Injunctions, Sec. 204, p. 1280.**

"To entitle a party to an injunction his right must be clear. It is said that no rule in equity is better settled than this. Injunctions are issued to prevent injury to clear rights, and the cases which will justify interference of this kind are those of clear, incontestable, well defined rights. Courts will not exercise this extraordinary authority when the right is doubtful or the facts are not definitely ascertained." **21 O. Jur. Injunctions, Sec. 13, p. 1000.**

"The extraordinary character of the remedy of injunction, and the danger that its use in improper cases may cause serious loss or inconvenience to an innocent party, require that the injunctive power shall be exercised sparingly and cautiously and only after thoughtful deliberation." **21 O. Jur. Injunctions, Sec. 18, p. 1007; Arthur Murray Studios v. Witter, 62 Abs 17; Ohio Midland Light and Power Co. v. Columbus and Southern Ohio Electric Co., 69 Abs 56.**

"The burden is upon one who seeks to enjoin the action of a public board in the exercise of its discretion, to show with that clearness which is always necessary to move a court of equity to interfere, a state of facts which would constitute an abuse of discretion." **21 O. Jur. Injunctions, Sec. 202, p. 1277.**

"The principle is well stated in the case of **Lessee of Coombs and Ewing v. Lane, 4 Oh St 112.** In the first syllabus, it is laid down as follows:

" 'In respect to official acts, the law will presume all to be rightfully done, unless the circumstances of the case overturn this presumption; and, consequently, acts done which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter.' See Dalrymple v. State of Ohio, 5 C. C. (n. s.) 185;" Libby v. Paul, Recorder 17 N. N. (n. s.) 433, 437, wherein it was held that

"The truth of the recitals contained in the resolutions (of the township trustees with reference to incorporation of a village) relating to this matter will be presumed."

The petition in the instant case avers each of the plaintiffs to be a "person interested" in said annexation as contemplated by §§707.11 and 709.07 and other related sections of R. C. The plaintiffs, Mr. and Mrs. McClintock, are adult freeholders residing within the area proposed to be annexed by said petition, and all the other plaintiffs are freeholders outside the territory proposed to be annexed, but residing immediately adjacent thereto.

In the case of Markos v. Cain, No. 191,704, dockets of this court, the evidence disclosed the plaintiff Markos was not a resident of the area sought to be annexed, the same as the plaintiffs in the instant case, except the McClintocks; and Gessaman, J., in the Markos case construed the term "person interested" as used in such statute, "to mean that to qualify as a person interested, one's rights must be affected substantially, but not remotely, **by the annexation itself.**"

In the case of Branson v. Cain, No. 194,081, dockets of this court,

again the evidence showed the plaintiff was not a resident of the area proposed to be annexed, and Draper, J., ruled:

"In order for a plaintiff to maintain such type of action, he must not only show his interest in the action but how the alleged annexation adversely affects his legal rights."

To the same effect, see Draper, J., decision in the case of Dunford v. Cain, supra.

"1. The weighing of various factors in connection with a proposed annexation of territory to a municipality, such as the possible interference with existing school facilities, is a political rather than a judicial function, and in a suit to restrain an annexatin proceeding the court will not consider the merits of the proposed annexation but only the legality of the proceeding." **Pickelheimer v. Urner, Auditor,** 29 N. P. (n. s.) 547, affirmed, **45 Oh Ap 343.**

Matthews, J., in the Pickelheimer case on p. 548, says:

"(1) There are allegations in the petition showing the great inconvenience to the plaintiff and others by the annexation because of the transfer from one school district to another, resulting from requiring children to travel several times as far over a much travelled road in order to reach the nearest school building in the Cincinnati district, which, it is alleged, is already overcrowded. While this result could be obviated by an arrangement under §7734 GC, between the two school districts, it is assumed for the purpose of this demurrer that the interference with existing school facilities is a factor that should be considered in determining whether annexation should or should not be approved. The court is of the opinion, however, that the weighing of this factor is a political rather than a juridical function * * *."

Continuing on p. 548, Matthews, J., says:

"The syllabus to Cole v. Watertown, 174 N. W. 91, says:

" 'The power to add territory to or take it from a municipal corporation is a political power vested in the legislature and in those to whom the legislature delegates it, and courts exercising such delegated power are limited to powers given by express provisions of statute.'

"In so far as the allegations of the petition set forth facts tending to show that the decision of the commissioners is unsound on the merits, the Court is of the opinion that they present no basis for judicial relief. The legislature has delegated that power to the commissioners and not to the courts."

On p. 553 of his opinion Matthews, J., further says:

"Under our statutes the action of two governmental bodies is necessary to effect its annexation. These two bodies are the County Commissioners and the Municipal Council. The action of the County Commissioners in approving the annexation has the effect of a consent to withdrawing of the territory from the unincorporated and to its incorporation into the incorporated territory. It is, however, only an approval or consent, and in the case of annexation proceedings initiated by a petition of freeholders, the petition approved by the County Commissioners is an offer made to the municipal corporation and is without effect until the municipal council accepts it."

- - - -

"4. The claim that the annexation of territory will reduce the tax duplicate and thereby curtail the revenue of a village, is not a valid objection, since the statute provides a method whereby an adjustment of financial matters between the municipalities is to be made." **Village of Brook Park, Ohio, v. City of Cleveland et al, 26 O. O. p. 536.**

Sec. 3311.06 R. C., provides:

"* * * When territory is annexed to a city * * *, such territory thereby becomes a part of the city school district * * *, and the legal title to school property in such territory for school purposes shall be vested in the board of education of the city or school district * * *. An equitable division of the funds and indebtedness between the districts involved shall be made under the supervision of the superintendent of public instruction, **whose decision shall be final.**" (Emphasis ours.)

Again, as pointed out by Judge Matthews, these political matters have been committed to an administrative official rather than the courts.

Also, as suggested by Matthews, J., in the Pickelheimer case, any unusual hardship or inconvenience, resulting from requiring children to travel too far or where one of the schools is overcrowded, could be obviated by an arrangement between the two school districts, under §3327.04 R. C. (§7734 GC), by a contract for the admission or transportation or both of pupils attending the school in question but residing outside the area proposed to be annexed, and in which the school is located.

"5. The fact that the incorporation of territory of a township into a hamlet may result in increased taxation in other parts of the township cannot avail in equity to prevent the organization and incorporation thereof under Sec. 1561a, Rev. Stat., if the people residing in its limits so desire, especially where the advantages resulting to its inhabitants in the way of public improvements, police protection and better government overwhelmingly counterbalance the resulting loss to persons residing without, in the township from which the territory is separated." R. Hall v. J. C. Siegrist, Recorder, 13 Ohio Dec. 46.

On page 58 of the Hall case, Neff, J., says:

"Passing now to a consideration of the next objection, which is, that it would not be right, just or equitable for the prayer of the petition to be granted. Upon the proof it appears, indeed the plaintiff says that the only objection which he has to the incorporation of this territory into a hamlet is that it would increase, or might increase his taxes. There is nothing to show that he would be especially affected or that any peculiar result as to the increase of taxes would arise as to him that would not be sustained equally by those owning property in other portions of the township."

Neff, J., on page 59 of his opinion, cites with approval Rouseville Borough, 21 Pa. Co. Ct. 262, which holds among other things:

"The mere disarrangement of school districts and election districts in a township is no ground for refusing to incorporate a borough."
and on the same page of his opinion, Neff, J., cites Smithfield Borough, 23 Pa. Co. Ct. 583, which holds:

"It is no objection to the incorporation of a borough that it will necessitate a rearrangement of school districts and polling places, and

that the financial burdens of the rest of the township may be slightly increased."

"In determining whether a borough should be incorporated, the court will consider the subject broadly, having in view the highest interests of all concerned, and not only the present situation, but the needs and growth of the locality in the future."

Neff, J., then concludes on p. 60 of the Hall case, supra,

"Both upon principle and authority, therefore, I am of the opinion that the proposed incorporation of this Hamlet of Bay cannot be restrained because it might result in some slight increase in the taxes of the plaintiff."

"Now looking to the broader question, as to whether it is equitable and just that this incorporation should be effected.

"* * * Many advantages would, doubtless, result to the residents of this territory if they were permitted to form a more compact and energetic form of government than can be afforded to them by the loose and inadequate government which the township may provide. If that territory is organized into a hamlet, improvements can be introduced into the territory, which would be of great advantage to the residents of that territory. From the location of this territory, it is a matter of manifest destiny that in the near fuure large numbers of persons will reside there during the summer. Its situation is peculiar, peculiarly adapted to summer residences. It seems to me for the court to hold that the many advantages that would result both in the way of improvements and police protection and better government,—shall be denied to the residents of that territory because the incorporation of the territory would result in a slight increase in the taxes of the remaining portion of the township, would be a conclusion unwarrantable and unjustifiable; that the resulting loss to the persons nonresident in the proposed hamlet, are so overwhelmingly counterbalanced by the advantages which result to the inhabitants of the territory, that I am unable to say that the incorporation of the proposed territory into a hamlet would be unequitable and unjust. But whatever else may be said, to permit the organization of this territory into a hamlet would promote progress and would confer very material benefits on a large number of people, while to refuse to permit it to be organized into a hamlet would be tantamount to allowing a very slight inappreciable injury to the plaintiff, or to those similarly circumstanced with him, to avail against such manifest and important advantages. And, taking into consideration all these things, I am of the opinion that the incorporation of the proposed territory is not unjust or inequitable. It would, therefore, seem to me that the petition should be dismissed."

The burden is upon one seeking an injunction to protect rights claimed by him to establish a greater right than any claimed by the defendants. **Kovaliczky v. Istvanik, 16 Abs 263,** motion to certify record overruled, December 26, 1935.

"1. The word 'interest' as used in §3532 GC (now §707.11 R. C.) allowing application for injunction with reference to the incorporation of villages, means that some legal right, title or interest of a resident

of the territory newly incorporated will be adversely affected by the incorporation." City of Lockland et al, v. Shaver et al, 59 Abs 600.

On page 602 of the Lockland case, Weber, J., comments the court cannot be required:

"* * * to reserve to each municipality, according to its speculative future needs, such part of said territory as will tend to equalize the per capita tax valuation of all the municipalities. No such principle is expressly or impliedly contained in the statutes."

In the case of City of Cincinnati v. Rost et al, 92 Oh Ap 8, Matthews, J., speaking for the Court of Appeals of Hamilton County on p. 11, says:

"We also agree with the interpretation of 'person' as used in §3532 GC (now §707.11 R. C.), made by the court in City of Lockland v. Shaver," supra.

In the Markos case, supra, the plaintiff, not being a resident of the area sought to be annexed, claimed that if the annexation proceeds, "it will deprive said township of considerable taxable property;" and Judge Gessaman stated:

"We observe that every annexation substracts considerable taxable property from one area and adds it to another. That fact, in and of itself, does not make the plaintiff a 'person interested.'"

See to the same effect Ohio Edison Co. et al v. McElrath, Recorder, et al, 73 Abs 236, where township lost certain tax revenues by the incorporation of part of its territory into a village.

It was further ruled in the Edison case, supra:

"5. Speculation as to how the finances of a village may be handled, or how inadequate may be the income of a village, should not in itself determine the right to incorporate."

"Nor is ground afforded for refusing a prayer for incorporation because some of those owning farm lands will be inconvenienced by reason of the fact that they do their shopping in a neighboring village and their social relations are maintained there." Libby et al v. Paul, Recorder, supra.

The statutes of the Municipal Code, relating to the general subject of the creation of villages, and the annexation of territory to municipalities already created, are treated, for the purpose of construction, as one act, the course of procedure at the hearing before the County Commissioners, directed by §707.06 R. C. (§3521 GC), being applicable to each branch of the subject. Sec. 28, O. Jur. 880, §709.03 R. C. (§3549 GC); and Shugars v. Williams, 50 Oh St 297. Consequently the foregoing citations of authorities on incorporation of villages, apply as well to the annexation of territory to a municipality.

Plaintiffs assert that the annexation petition in the instant case involves part of the same territory proposed to be annexed to the City of Columbus which proposal was defeated by a substantial vote at the November election in 1954; and plaintiffs insist that by virtue of §709.17 R. C., "no further proceedings shall be had for at least five years," to annex said territory to the City of Columbus, after the defeat of said proposal in 1954.

The Ohio statutes provide two methods for the initiation of annexa-

tion proceedings, one, §709.02 et seq, R. C., on application by citizens, and the other, §709.13 et seq, R. C., on application by a municipal corporation, by the passage of an ordinance seeking annexation. Sec. 709.17 R. C., requires that the question of annexation must be submitted to a vote by the electors of the area involved, where the proposal to annex territory is by ordinance of the municipality itself. No such election is required where the application to annex is by a majority of the adult freeholders residing in such territory.

The proposed annexation to the City of Columbus, which was defeated at the polls in 1954, was on an application of the city itself by ordinance passed by its council. The annexation proposal in the instant case is by petition of the resident freeholders of the area in question.

The mandate of §709.17 R. C. (§3561 GC), that "Thereupon all annexation proceedings shall be stayed until the result of the election is known," "does not stay annexation proceedings as to which no election is required," such as proceedings initiated by the freeholders. Roush et al v. Barthalow, Auditor, etc., et al, 105 N. E. (2d) 85. This case was affirmed by the Court of Appeals, 104 N. E. (2d) 697, and the appeal dismissed by the Supreme Court, 156 Oh St 452.

On page 88 of his opinion in the Roush case, Rutherford, J., says: "The purpose of the election is not to determine whether or not the territory should be finally annexed as that is for the County Commissioners to determine but is a step to be taken by the Municipality as a condition precedent to their right to proceed." * * *

"The fact that the people of the entire district voted for annexation to Gahanna does not give them that right, but only the right to place the matter before the commissioners within 90 days thereafter. This is the same right given to the majority of the resident freeholders of any given district upon the filing of a proper petition." * * *

"Thus it appears that the legislature made provision for both annexation by municipalities and by individuals, the former requiring an election to obtain the consent of the individuals while, in the latter case the consent appears from the signatures on the petition."

In the case of State, ex rel. Loofbourrow v. County Commissioners of Franklin County, 132 N. E. (2d) 259, our Court of Appeals held:

"7. Upon completion of the hearing required by §707.06 and §707.07 R. C., requires the board of County Commissioners to exercise a discretion, and a writ of mandamus may issue to compel the exercise of such discretion."

In the Loofbourrow case the annexation proceeding was initiated by the Village of Worthington by an ordinance of its council to annex certain territory, including the area in the instant case, and pursuant to the mandate of §709.17 R. C., the matter of such annexation to the Village of Worthington was placed on the ballot and approved by a substantial majority of the electors of the area sought to be annexed to Worthington. After such election the County Commissioners refused to act on said application for annexation, and our Court of Appeals allowed the Writ of Mandamus ordering the County Commissioners to exercise their discretion upon said annexation proposal of Worthington,

after approval thereof by the electors of the area proposed for annexation; and, thereupon the County Commissioners refused to approve annexation of said area to Worthington.

■ This Court, therefore, holds that §709.17 R. C., has no application to an annexation proceeding initiated by the resident freeholders of the area affected, since the election required by said section is limited to annexation proceedings initiated by the municipality itself, and consequently the provision contained in said section that "no further proceedings shall be had for at least five years," when the vote in the election is against annexation, does not stay annexation proceedings by the resident freeholders themselves.

■ This Court further holds that after said election in 1954 when the electors approved the annexation of certain territory to the Village of Worthington, the County Commissioners were still invested with the discretion to either allow or refuse said annexation of such territory to Worthington; and that in the exercise of that discretion said County Commissioners refused said application for annexation to the Village of Worthington.

Counsel for plaintiffs contend that the present action is in the nature of a proceeding in error as stated in **Hulbert v. Mason, 29 Oh St 562,** and at the same time, is an equitable proceeding for injunction as set forth in **Geauga Lake Improvement Association v. Lozier, 125 Oh St 565.**

In the case of Caito v. Cain, etc., No. 191,084, dockets of this court, Leach, J., after discussing the Hulbert case, supra, says:

"However, since the amendment of the statute all this has been changed by subsequent court decision;"

and then cites the opinion of Allen, J., in the case of Geauga Lake Improvement Assn., supra. It may be that the Hulbert case has not been expressly overruled, but the statute on which the Hulbert case was founded has been so materially changed that the Geauga Lake Improvement Assn. case based on the revamped statute, has superseded the Hulbert case.

In the Geauga Lake Improvement Assn. case, Allen, J., on page 574, says:

"Under §3535 GC (§707.14 R. C.), as it now exists, the injunction proceeding, with its question as to the inaccurate description of boundaries, the unreasonable size of the limits of the proposed corporation, and whether it is right, just or equitable that the prayer of the petition be granted, presents certain issues that we commonly describe as judicial. **The function of the court in this case is to try an issue framed by pleadings in an injunction suit, according to the rules of procedure in injunction suits, to hear evidence and to administer justice according to that evidence adduced at the trial.**

"The initial hearing before the commissioners is political, or **administrative,** but how does that fact divest the application for injunction of its judicial nature? (Emphasis ours.)

By virtue of §709.03 R. C., it is now well established that issues before the court in an annexation proceeding, are the same as those set out

in §707.11 R. C., and referred to by Allen, J., in the Geauga Lake Improvement Assn. case.

We come now to the more specific issues raised by the respective plaintiffs, in the light of the controlling principles in a case of annexation proceedings, as stated in the numerous decisions of our courts in the cases heretofore noticed.

The McClintocks assert, among other reasons, that they are a "person interested" as contemplated by the statutes relating thereto, and that it is not just, right and equitable that the proposed annexation be granted, since they would become subject to the Columbus Income Tax, but no evidence was offered as their particular income that would be subject to such tax, and no evidence was offered that they would be especially affected or that any peculiar result as to the increase of their taxes would arise that would not be sustained by others in the area sought to be annexed. See the Hall v. Siegrist case, supra, and in that case Neff, J., reaches the conclusion that the proposed incorporation of the hamlet (same principle in annexation), cannot be restrained because it might result in some slight increase in the taxes of the plaintiff.

At the time of the hearing in this case it was a matter of common knowledge, as well as knowledge which the Court has virtute officii (Fawick Airflex Co., v. United Electrical R. & M., 87 Oh Ap 371, dismissed for want of debatable question, 154 Oh St 106; 21 O. Jur. [2d] p. 40), that the tax rate on real property in Sharon Township was substantially higher than in the City of Columbus. To illustrate: the rate in Sharon Township was $26.20 per thousand dollar valuation, while the rate in Columbus was $21.40 per thousand dollar valuation; and there will be a reduction in 1957 in said rate in Columbus of $1.60 compared to .70c per thousand in Sharon Township. It stands to reason that this substantial reduction of the real property tax in Columbus was made possible by the income tax of which the plaintiffs McClintocks complain.

It is understandable that the plaintiffs, Watkins and Hewlett, who do not reside in the territory proposed to be annexed, make no complaint as to the Columbus Income Tax, since, as members of the faculty of Ohio State University, they are already subject to such tax, as well as being burdened with the high real property tax of Sharon Township. Moreover, the courts must know as judges what they know as men. Leonard v. State, 100 Oh St 456; 21 O. Jur. (2d) 40; and it is well known that services such as sewers and water cost more in the suburban areas than in the city which provides such services.

Let us now examine further the complaints of the plaintiffs McClintocks as to the reasons why they are opposed to annexation to Columbus. They assert that the City of Columbus cannot provide adequate police protection for their area, and does not have adequate facilities to provide fire protection for their area, as well as adequate road service. The Court is of the opinion, however, that the weighing of these factors is a political rather than a juridical function, and presents no basis for judicial relief. See case of Pickelheimer v. Urner as Auditor, supra.

However, if it be assumed that these are factors that should be considered in determining whether the annexation should or should not be approved, the Court cannot say that the factual evidence in this case is clear and convincing that such services as they presently exist are superior to such services as they, in all probability, would be if the annexation were completed. It stands to reason that such services would be more likely to improve in the future, under the facilities of a metropolitan city like Columbus, than they would under the township form of government, which is ill adapted to serve the needs of a fast-growing community.

In determining whether the annexation in this case is just, right and equitable, the Court will consider the subject broadly, having in view the highest interests of all concerned, and not only the present situation, but the needs and growth of the locality in the future.

The other objections raised by plaintiffs McClintocks, are not only of a purely political nature, but no proof whatever has been offered in support thereof, or that such factors will be detrimental or cause real injury to the complainants.

Both upon principle and authority, therefore, this Court is of the opinion that the proposed annexation should not be restrained because of any or all the grounds advanced by the McClintocks, the only plaintiffs who reside in the territory proposed to be annexed to Columbus.

Let us now examine the reasons advanced by the other plaintiffs against said annexation in the light of the fact that they do not reside in the area proposed to be annexed.

The chief objection lodged against said annexation proposal by the plaintiffs who are non-residents of the area sought to be annexed, is that they have children attending the Sharon Elementary School which is located within the area proposed to be annexed, and that said school is the only elementary school advantageously located for their children due to its proximity to their residences.

It has been repeatedly held by the courts that the mere disarrangement of school districts in a township is no valid ground for refusing to annex territory within said township, to a municipality (or to incorporate a municipality within said township based on the same principles); and that no valid objection can be lodged against such annexation, because it will necessitate a rearrangement of school districts and the financial burdens of the rest of the township will be somewhat increased. Hall v. Siegrist as Recorder, supra, citing with approval two Pennsylvania cases. In the Pickelheimer Case, supra, which was affirmed by the Court of Appeals of Hamilton County, Matthews, J., ruled that the weighing of this factor is a political rather than a juridical function, and presents no basis for judicial relief.

The Pickelheimer case presented a problem very similar to the one suggested in the instant case, in that the petition averred great inconvenience to the plaintiff and others by the annexation because of the transfer from one school district to another, resulting from requiring children to travel several times as far over a much travelled road in order to reach the nearest school building in the Cincinnati district,

which, it was alleged, was already overcrowded; but it was very wisely observed by Matthews, J., that this result could be obviated by §7734 GC (now §3327.04 R. C.) by a contract between the two school districts for the admission or transportation or both, of pupils attending the school in question, but residing outside of the area to be annexed in which said school is located.

Then, too, §3311.06 R. C., provides:

"When territory is annexed to a city, * * * becomes a part of the city school district * * * an equitable division of the funds and indebtedness between the districts involved shall be made under the supervision of the superintendent of public instruction, **whose decision shall be final.**" (Emphasis ours.)

It is the opinion of this Court that these two sections of the school code afford a legal remedy that will solve the problems of the plaintiffs' children attending this same school until other arrangements may be made. If so, their problems afford no basis for an injunction.

It is essential to the right of one to an injunction that it be averred and proved that the plaintiff has no adequate remedy at law. **White v. Columbus, 27 Abs 489.**

It has been argued by counsel for the plaintiffs that the several decisions by other judges of this court cited herein were erroneous; and that this branch of the court should not make the mistake of following such decisions. We are not inclined to the view that such decisions were erroneous, but this branch of the court might well have differed with the opinion of some of his colleagues at the time, but is disinclined to overrule any such decisions unless clearly satisfied such decision or decisions were erroneous.

"The doctrine of stare decisis, however, comes into operation, and makes a court disinclined to overrule a former decision. It has been said to be a general rule and practice for a judge of the Common Pleas Court to follow the former decisions of that court that are unreversed, even though made in a different case." **11 O. Jur. Courts, Sec. 128, p. 774; Heintz v. Coldwell, 18 O. D. N. p. 725, 6 O. L. Rep. 45; Merrick, et al. v. Merrick, et al., 57 Abs 49.**

"It is very evident that the simplest justice to our predecessors as well as the public, should prevent us from interfering with decisions deliberately made, merely because a difference of opinion might exist between them and us upon a doubtful and difficult question of construction." Ranney, J., delivering the opinion of the Court, **Kearney v. Buttles, 1 Oh St 362, 366; 11 O. Jur. Courts, Sec. 138, p. 786.**

Under the evidence at the close of the plaintiffs' case, it is this Court's finding that the plaintiffs have not first established any interest which they have, so as to entitle them to raise questions of errors or irregularities as to procedure. Certainly there is no evidence before the Court from which it can be determined that the County Commissioners did not act in a proper manner upon the questions now before the Court.

This Court must find that the plaintiffs have not maintained the issues on their part to be maintained, in showing a clear right to bring this action, and especially have not shown a clear right to an injunction permanently restraining the annexation allowed by the County Com-

missioners; and, therefore, the Court sustains the motion of counsel for defendant for a judgment of dismissal at the close of plaintiffs' case. Entry accordingly with exceptions by counsel for the plaintiff.